## EGAN *v.* HART.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 63. Submitted October 27, 1896. — Decided February 1, 1897.

On error to a state court in a chancery case (as also in a case at law), when the facts are found by the court below this court is concluded by such findings.

On error to a state court the opinion of that court is to be treated as part of the record, and it may be examined in order to ascertain the questions presented, as may also be the entire record, if necessary to throw light on the findings.

The finding by the trial court, sustained by the Supreme Court of the State that the stream across which the dam complained of was erected, was a non-navigable stream, was a finding of fact which is conclusive here, and affords ground broad enough on which to maintain the judgment below, independent of any Federal question; and this court is consequently without jurisdiction.

THE case is stated in the opinion.

*Mr. J. C. Egan, Mr. Fred Thatcher* and *Mr. C. J. Boatner* for plaintiffs in error.

*Mr. A. H. Leonard* for defendants in error.

MR. JUSTICE WHITE delivered the opinion of the court.

The plaintiffs in error, by original and supplemental petitions, sued in order to perpetually enjoin the building, by the board of state engineers of the State of Louisiana, of a dam across an alleged stream, designated as Bayou Pierre. It was averred that the construction would permanently impair the

value of certain real property to the plaintiff belonging, situated in the vicinage of the proposed work; that it was a purely private undertaking which the board of state engineers was not authorized to do at public expense, and that the dike, if carried out, would obstruct the navigation of Bayou Pierre, and would therefore violate the laws of the United States. The State of Louisiana, by intervention, and the defendants, by answers, traversed the averments of the petitions. There was judgment in the trial court rejecting the plaintiffs' demand, which was, on appeal, affirmed by the Supreme Court of the State of Louisiana. 45 La. Ann. 1358. To the decree of affirmance this writ of error is prosecuted.

The record before us contains all the testimony introduced and evidence offered in the trial court, all of which was open for consideration and passed upon by the Supreme Court of the State of Louisiana. On error, however, to a state court, this court cannot reëxamine the evidence, and when the facts are found below is concluded by such finding. *Dower* v. *Richards,* 151 U. S. 658; *Bartlett* v. *Lockwood,* 160 U. S. 357; *Stanley* v. *Schwalby,* 162 U. S. 255, 278. True it is that in *Dower* v. *Richards* the court (referring to the dictum in *Republican River Bridge Co.* v. *Kansas Pacific Railway,* 92 U. S. 315, 317) treated as open for further consideration the question whether in chancery cases the power existed in this court to review the decision of state courts on both the law and the fact. We, however, conclude that not only the very nature of a writ of error, but also the rulings of this court from the beginning, make it clear that on error to a state court in a chancery case, as in a case at law, when the facts are found by the court below, this court is concluded by such findings. The adjudications are collected very fully in *Dower* v. *Richards,* and in the subsequent cases above referred to.

It is likewise settled that on error to the Supreme Court of Louisiana the opinion of that court is to be treated as part of the record, and that it may be examined in order to ascertain the questions presented, and this court may for the purpose, not of deciding the facts, but by way of throwing light on the findings, look into the entire record. *Crossley* v. *New Orleans,*

108 U. S. 105 ; *Gross* v. *United States Mortgage Co.*, 108 U. S. 477.

Turning to the opinion of the Supreme Court of Louisiana, it is obvious that it held not only that under the law of Louisiana the board of state engineers was competent to undertake the work in question, and any damage resulting to the plaintiff thereby was *absque injuria,* but that it also rested its decree upon three propositions, two of fact and one of law, viz. : First, that the construction of the dam was a public work jointly undertaken by the government of the United States and the board of state engineers of the State of Louisiana. Second, that the stream across which the dam was to be erected was not navigable, and was hence subject to state control. Third, that even if navigable, as the stream was wholly within the State of Louisiana, it was hence exclusively under the dominion of the state law. The findings of the court on these subjects were thus expressed :

"Speaking of the nature of the work, the district judge says : 'It is a public work, planned and located by state authority, and is a part of a system of levees ordered by the State for the prevention of overflows. It is the initial point of a line of levees, the propriety, location and construction of which have been determined by the State, acting through the state board of engineers, its accredited and duly authorized agents. It begins on the highlands on the west bank of the bayou and extends thence across the bayou to Hart's Island, and from there to Dixie plantation, on Red River.'

" The United States government has contributed four thousand dollars — a sum equal to the price of Hart's contract with the State — toward the cost of construction of the line of levees of which the dam in question is a part. Manifestly the claim that such a work undertaken by the State, with the aid of the general government, is the work of private persons for private and selfish motives is absolutely without foundation.

\*  \*  \*  \*  \*

" As to plaintiffs' contention that Bayou Pierre is a navi-

gable stream, we have carefully considered the voluminous
testimony on that part of the case, and we are clear that
the upper part of Bayou Pierre, in which the dam in ques-
tion is situated, is not navigable, and that the navigation of
even the lower part of Bayou Pierre, a considerable distance
below the dam, is attended with many obstacles and diffi-
culties. On this point the district judge says : 'From Grande
Ecore, where it (Bayou Pierre) enters Red River, to a point
some miles below its junction with Tone's Bayou, a stream
flowing out of the river, Bayou Pierre has been frequently
navigated by steamboats. But from the point of junction
to the dam in question it has never been navigated and is
unnavigable. Between these two points it is nothing but a
high-water outlet, going dry every summer at many places,
choked with rafts and filled with sand, reefs, etc. It has no
channel; in various localities it spreads out into shallow lakes
and over a wide expanse of country, and is susceptible of
being made navigable just as a ditch could be if it were dug
deep and wide enough and kept supplied with a sufficiency
of water.' We fully concur in this finding. Besides, Bayou
Pierre is wholly within the State, and the authority of the
legislature over it is complete. *Hamilton* v. *R. R. Co.,* 34
An. 975; *Boykin* v. *Shaffer,* 13 An. 129."

Now, the foregoing findings, by the trial court, approved
and affirmed by the Supreme Court of Louisiana, that is, the
non-navigability of the stream, and the concurrent participa-
tion of the United States and the State in the building of
the dam, are purely questions of fact, and, therefore, as we
have said, are conclusive.

It is clear that if these questions of fact are adequate to
determine the controversy between the parties, and broad
enough to maintain the judgment independent of any Federal
question, then we are without jurisdiction, although the state
court may have also decided such a question. *Eustis* v.
*Bolles,* 150 U. S. 361; *N. Y. & N. E. Railroad* v. *Woodruff,*
153 U. S. 689; *Hammond* v. *Conn. Mut. Life Ins. Co.,* 150
U. S. 633.

The claim is that the court below erroneously decided a

Federal question, which it is asserted is absolutely necessary to maintain its decree independently of the conclusions by it expressed on the foregoing propositions of fact. This argument is deduced from that portion of the decision below which held that even if the stream was navigable it was nevertheless competent for the state authority to obstruct or entirely close it, because, being wholly within the State, it was under its exclusive jurisdiction and authority. Such power, it is argued, if ever possessed by the State, depended solely on the absence of Congressional legislation, asserting the reserved authority of the general government over all navigable streams, including even those wholly within a State, and therefore ceased to exist from the enactment by Congress of the law of September 19, 1890, c. 907, 26 Stat. 426, 454. By the statute relied on Congress forbade the construction of "any bridge . . . or other works over or in any . . . navigable waters of the United States under any act of the legislative assembly of any State, until the location and plan of such bridge or other works have been submitted to and approved by the Secretary of War, or to excavate or fill or in any manner alter or modify the course, location, condition or capacity of the channel of said navigable waters of the United States, unless approved by the Secretary of War." But by its plain terms this statute relates solely to navigable waters, and one of the propositions of fact found by the Supreme Court of the State is that the stream in question was not navigable. The necessary effect, therefore, of accepting this finding is to take the case out of the reach of the law relied on, and this causes the question of fact, that is, non-navigability, to be wholly and adequately sufficient to maintain the judgment without reference to the statute in question.

It is sought to avoid this inevitable conclusion by contending that the fact found below is not that the stream was non-navigable, but only that it was so at the particular place where the dike was proposed to be built. Non-navigability at the particular place, it is argued, does not exclude the implication that the impeding of the water at that point would

obstruct the flow of water and injure the navigable stream below the dam, thereby bringing the case directly under the terms of the statute. But this construction of the finding below is entirely too narrow. An examination of the record and a consideration of the entire context of the opinion of the Supreme Court of the State makes it clear that the whole controversy below was whether the dam, if erected at the particular place in question, would affect or injure the navigability of the stream below, and that the finding of fact that the stream was not navigable at the point where the dam was to be erected, was substantially a conclusion that the erection of the dam bore no relation to and would have no effect in obstructing the navigation of the stream known as Bayou Pierre below the dam, and which stream the court recognized as being navigable in a qualified sense. The record discloses that Bayou Pierre leaves the Red River a short distance below the city of Shreveport, and, after a long and meandering course, reënters the Red River just above the town of Grande Ecore. The proposed dam crosses Bayou Pierre a short distance from the point where it leaves Red River. Below the point of the dam a stream, known as Tone's Bayou, which also flows out of the Red River, empties into and forms a junction with Bayou Pierre. The portion of the bayou which the court found to be occasionally navigable was that below the junction of Tone's Bayou. As to the portion above the junction of Tone's and Bayou Pierre, that is, in the direction of the dam, the finding of fact is as follows: "Between these two points it is nothing but a high-water outlet, going dry every summer at many places, choked with rafts and filled with sand, reefs, etc. It has no channel; in various localities it spreads out into shallow lakes and over a wide expanse of country, and is susceptible of being navigable just as a ditch could be if it were dug deep and wide enough and kept supplied with a sufficiency of water." The obvious effect of this finding is that the qualified navigability existing in Bayou Pierre below the inflow into that stream of the water from Tone's Bayou, is wholly uninfluenced by water leaving Red River by way

of the upper mouth of Bayou Pierre. Indeed, the finding amounts to saying that the stream formed by the junction of Bayou Pierre and Tone's Bayou is a new and in reality a distinct and different stream (although called by the same name) from the stream above the junction, and in which it is proposed to erect the dam. From these considerations it obviously results that the expression of opinion *arguendo* by the state court as to the power of the State of Louisiana to control a navigable stream wholly within its borders, even if erroneous, was unnecessary to the decision of the cause, and that the decree by that court rendered is adequately sustained by the conclusion of fact as to the non-navigability of the stream. This being the case, it is unnecessary to consider whether the finding that the work of building the dam was concurrently carried on by the State and the United States is not also sufficient to sustain the decree below, since it practically determines that the dam was being constructed in conformity to the act of Congress.

*Dismissed for want of jurisdiction.*