## BACKUS *v.* FORT STREET UNION DEPOT COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 55.   Argued January 17, 18, 1898. — Decided March 7, 1898.

As the respondents, both at the trial in the Circuit Court of the State, and in the subsequent proceedings on the certiorari in the Supreme Court of the State, specifically set up and claimed rights under the Federal Constitution which were denied, the jurisdiction of this court is not open to doubt.

While this court may examine proceedings had in a state court, under state authority, for the appropriation of private property to public purposes, so far as to inquire whether that court prescribed any rule of law in disregard of the owner's right to just compensation, it may not inquire into matters which do not necessarily involve, in any substantial sense, the Federal right alleged to have been denied.

The settled rule of this court in cases for the determination of the amount of damages to be paid for private property condemned and taken for public use, is that it accepts the construction placed by the Supreme Court of the State upon its own constitution and statutes.

In case of such condemnation and taking, a State may authorize possession to be taken prior to the final determination of the amount of compensation, provided adequate provision for compensation is made.

As to the court to determine the question, or the form of procedure, all that is essential is that, in some appropriate way, before some properly constituted tribunal, inquiry shall be made as to the amount of compensation; and when this has been provided for there is that due process of law which is required by the Federal Constitution.

There is no vested right in a mode of procedure established by state law for the condemnation of property for public use; but each succeeding legislature may establish a different one, provided only that in each is preserved the essential element of protection.

An appellate court is not required to set aside the judgment of the trial court by reason of failure to give instructions which were not asked for.

The limit of interference by this court with the judgments of state courts is reached when it appears that no fundamental rights have been disregarded by the state tribunals.

The Supreme Court of Michigan was called upon to consider only such objections as had been particularly specified, and all others were deemed to have been waived.

The decision by the Supreme Court that it had power to set aside the verdict and order a new trial was not a reversal of a ruling that the Circuit Court had no such power.

This court is bound to accept the construction placed upon the state statute by the Supreme Court of the State, and to hold that it means that if the second appraisal was less than the first, and the amount of the first had been paid, the company was entitled to recover the difference from the party to whom it had been paid.

THE facts in this case are as follows: The defendant in error is a corporation created under the laws of the State of Michigan, for the purpose of constructing a union depot in the city of Detroit. In order to connect this depot with the railroads desiring to enter, it was necessary to place tracks on River street, and some of the way, at least, these tracks had to be elevated above the grade of the street. As a part of its enterprise the Depot Company undertook the work of constructing these tracks. The plaintiffs in error were the owners of a manufacturing plant. The individual plaintiff in error held the title in fee to the property and the corporation plaintiff in error was his lessee. This manufacturing plant fronted on River street, and fronted on that part of it where the tracks were necessarily on a viaduct far above the surface. No part of the ground actually occupied by the plant was sought to be taken, but under the laws of Michigan the owner of a lot fronting on a street owns to the centre of the highway and is entitled to recover damages in case that street is appropriated to the use of a railroad. The third clause in section 4 of the Union Depot act (1 How. Comp. § 3461) provides specifically that the amount of these damages shall be ascer-

tained in the same way as is provided in ordinary cases of condemnation.

The constitution of Michigan provides:

Article XV, Section 9. "The property of no person shall be taken by any corporation for public use without compensation being first made or secured, in such manner as may be prescribed by law."

Article XVIII, Section 2. "When private property is taken for the use or benefit of the public, the necessity for using such property, and the just compensation to be made therefor, except when to be made by the State, shall be ascertained by a jury of twelve freeholders, residing in the vicinity of such property, or by not less than three commissioners, appointed by a court of record, as shall be prescribed by law."

The Michigan Union Depot act (Act of June 9, 1881, No. 224) was passed in 1881. Public Acts, 1881, p. 320. It prescribes proceedings for the condemnation of private property, substantially similar to those in the Michigan General Railroad Law, first passed in 1855. Act of February 12, 1855, No. 82, Sections 9, 10 and 11 of the Depot act, being sections 3466, 3467 and 3468 of 1 How. Comp., provide:

§ 3466 — Sec. 9. "The commissioners shall take and subscribe the oath prescribed by article eighteen of the constitution. . . . They may view the premises described in the petition, and shall hear the proof and allegations of the parties, and shall reduce the testimony, if any is taken by them, to writing, if requested to do so by either party, and after the testimony is closed in such case, and without any unreasonable delays, and before proceeding to the examination of any other claim, all being present and acting, shall ascertain and determine the necessity of taking and using any such real estate or property for the purposes described; and, if they deem the same necessary to be taken, they shall ascertain and determine the damages or compensation which ought justly to be made by the company therefor to the party or parties owning or interested in the real estate or property appraised by them. . . . They shall make a report to said court or judge, signed by them, of the proceedings before them, if any, which

may be filed with the clerk of the court, either in vacation or term time, or the probate court, as the case may be. . . . In case a jury shall have been demanded and ordered by the court, pursuant to section eight of this act, the said jury shall proceed to ascertain and determine the necessity of taking and using any such real estate or property, and the damage or compensation to be paid by the company therefor, in the same manner and with like effect as is provided in this section in the case of commissioners, and as is further provided in said section eight. . . . The said judge, or a circuit court commissioner to be designated by him, may attend said jury, to decide questions of law and administer oaths to witnesses, and he may appoint the sheriff or other proper officer to attend and take charge of said jury while engaged in said proceedings. And the jury shall proceed to determine the amount of damages to be awarded, and shall have all the powers hereby conferred upon commissioners; and a report signed by the jury, whether the judge is or is not in attendance, shall be valid and legal. . . ."

§ 3467 — SEC. 10. "On such report being made by the commissioners or jury, the court, on motion, shall confirm the same on the next or any subsequent day when in session, unless for good cause shown by either party; and when said report is confirmed, said court shall make an order containing a recital of the substance of the proceedings in the matter of the appraisal, and a description of the real estate or property appraised, for which compensation is to be made, and shall also direct to whom the money is to be paid, or when and where it shall be deposited by the company. Said court, as to the confirmation of such report, shall have the powers usual in other cases."

§ 3468 — SEC. 11. "A certified copy of the order so to be made shall be recorded in the office of the register of deeds for said county, in the book of deeds; and thereupon, on the payment or deposit by the said company, of the sum to be paid as compensation for such land, franchise or other property, and for costs, expenses and counsel fees as aforesaid, and as directed by said order, the company shall be entitled to

enter upon and take possession of and use the said land, franchise and other property for the purpose of its incorporation; and all persons who have been made parties to the proceedings, either by publication or otherwise, shall be divested and barred of all right, estate and interest in such real estate, franchise or other property, until such right or title shall be again legally vested in such owner; and all real estate or property whatsoever acquired by any company under and in pursuance of this act, for the purpose of its incorporation, shall be deemed to be acquired for public use: *Provided,* The said sum to be paid as damages and compensation, and costs, expenses and counsel fees as aforesaid, shall be paid by the company, or deposited as provided in this act, within sixty days after the confirmation of said report by the said court; and in case said company fail or neglect so to do, such failure or neglect shall be deemed as a waiver and abandonment of the proceedings to acquire any rights in said land or property. Within twenty days after the confirmation of the report of the commissioners or jury, as above provided for, either party may appeal, by notice in writing to the other, to the Supreme Court, from the appraisal or report of the commissioners or jury; such notice shall specify the objections to the proceedings had in the premises, and the Supreme Court shall pass on such objections only, and all other objections, if any, shall be deemed to have been waived; such appeal shall be heard by the Supreme Court at any general or special term thereof, on notice thereof being given according to the rules and practice of the court. On the hearing of such appeal, the court may direct a new appraisal before the same or new commissioners or jury, in its discretion. The second report shall be final and conclusive upon all parties interested. If the amount of the compensation to be allowed is increased by the second report, the difference shall be a lien on the land appraised, and shall be paid by the company to the parties entitled to the same, or shall be deposited as the court shall direct; and in such case all costs of the appeal shall be paid by the company; but if the amount is diminished, the difference shall be refunded to the company by the party to whom the same may

have been paid, and judgments therefor and for all costs of the appeal shall be rendered against the party so appealing. On the filing of the report, such appeal, when made by any claimant of damages, shall not affect the said report as to the right and interests of any party, except the party appealing; nor shall it affect any part of said report in any case, except the part appealed from; nor shall it affect the possession of such company of the land appraised; and when the same is made by others than the company, it shall not be heard except on a stipulation of the party appealing not to disturb such possession during the pendency of such proceedings."

The proceedings were commenced in the usual form by a petition filed by the Depot Company, January 24, 1891, in the circuit court for the county of Wayne, in which county the city of Detroit is situate.

The plaintiffs in error, respondents below, demanded a jury. The first hearing commenced on February 25, 1891, and terminated on March 18, 1891, in a disagreement of the jury upon both issues, that of necessity and that of compensation. A second hearing was had, commencing on June 10, 1891, and resulting on July 16, 1891, in a verdict in favor of the Depot Company on the question of public necessity, and assessing the damages of the respondents as follows: To Absalom Backus, Jr., as the owner of the fee, $17,850; to the corporation, A. Backus, Jr., & Sons, $78,293. At neither of these hearings was the judge of the circuit court present. Upon the motion of the Depot Company the circuit court vacated the award of damages, and ordered that a new jury be empanelled. Thereupon the respondents applied to the Supreme Court of the State for a writ of mandamus, to compel the setting aside of this order. That court, on November 19, 1891, issued a peremptory writ of mandamus, as prayed for. 89 Michigan, 210. On November 30, 1891, the circuit court, in compliance with this writ, entered an order which, as amended, confirmed the verdict and award of the jury, and also provided as follows:

" It is further ordered that within sixty days from the date of this order the Fort Street Union Depot Company is required to tender and pay to Absalom Backus, Jr., the sum of seven-

teen thousand eight hundred and fifty dollars, and to A. Backus, Jr., & Sons the sum of seventy-eight thousand two hundred and ninety-three dollars, and to James N. Dean and William H. Davidson, executors, the sum of one dollar, together with their costs and expenses, if the same have been taxed, including an attorney's fee of twenty-five dollars; and if the said parties or either of them refuse to accept the tender and payment of said sums, the Fort Street Union Depot Company is required to deposit the same, under the supervision of the clerk of this court, in the Detroit National Bank and to the credit of this cause, including said costs and expenses; provided, that if said costs and expenses have not been taxed within the said sixty days, the same to be so deposited within five days after they are taxed.

" Said money shall remain on deposit in said bank, but at the risk of the petitioner, subject to be drawn therefrom and to be paid to the parties entitled to the same on orders signed by one of the judges of this court and countersigned by the clerk.

" It is further ordered that upon the tender and payment or deposit of said sum of ninety-six thousand one hundred and forty-four dollars, and of said costs, expenses and counsel fees, as aforesaid, the said Fort Street Union Depot Company shall be entitled to enter upon and take possession of and use the right of way above described for the purpose of its incorporation under its articles of association and the constitution and laws of this State, and that said respondent shall be divested and barred of all right, estate and interest in such right of way until such right or title shall be again legally vested in them and said right of way shall be deemed to have been acquired by said company for public use."

On December 2, 1891, the Depot Company appealed from the award of the jury, and from the confirmation thereof, to the Supreme Court of the State. On January 26, 1892, the Depot Company paid to the respondents, and they received, the amounts awarded to them, and thereupon the Depot Company took full possession of the property, constructed its tracks and has been ever since in possession and use of them.

On March 3, 1892, the appeal was argued in the Supreme Court, and on June 10, 1892, its decision was announced.  92 Michigan, 33.  It was held by a majority of the court (the Chief Justice dissenting) that the opinion expressed on the granting of the mandamus had too narrowly restricted the powers of the circuit court, and it was ordered that the verdict of the jury, while confirmed so far as it determined the question of necessity, should be vacated and set aside so far as it awarded compensation; and that the cause be remanded to the circuit court, with directions to proceed with a new appraisal, the costs of the appeal to abide the event of such appraisal.

It was also held that the fact that the amount of the award and confirmation had been paid to the respondents and the property taken possession of by the Depot Company since the taking of the appeal did not affect the right of the Depot Company to a new trial upon the question of compensation.

When the case was returned to the circuit court the respondents objected to any further proceedings, but the same were overruled, and a jury empanelled.  The sessions of this jury were presided over by the circuit judge, and, after hearing the testimony and examining the property, it returned a verdict, assessing the damages of the individual respondent at the sum of $15,000, and of the corporation respondent at the sum of $48,000.  Thereupon, on motion of the Depot Company, and on December 28, 1893, the circuit court entered a judgment against the individual respondent for $2850, the difference between the amount of the first and second awards, and a like judgment against the corporation respondent for $30,293, and also a judgment against both respondents for the costs of the appeal and subsequent proceedings taxed at $4168.20.  On the 26th of June, 1894, the respondents filed their petition in the Supreme Court of the State of Michigan, praying for a writ of certiorari.  The writ was allowed, whereby the entire record was transferred to that court, which, in an opinion filed on January 8, 1895, affirmed the proceedings below, with costs.  103 Michigan, 556.  Whereupon the plaintiffs below sued out this writ of error.

*Mr. Don M. Dickinson* for plaintiffs in error.

*Mr. Fred. A. Baker* for defendant in error.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

Inasmuch as the respondents, both on the trial in the circuit court and in the subsequent proceedings on the certiorari in the Supreme Court, specifically set up and claimed rights under the Federal Constitution which were denied, the jurisdiction of this court is not open to doubt. They again and again insisted that certain provisions of the Federal Constitution, which they named, stood in the way of any further proceedings against them.

It is also not open to further debate, since the decision in *Chicago, Burlington & Quincy Railroad* v. *Chicago*, 166 U. S. 226, that this court may examine proceedings had in a state court, under state authority, for the appropriation of private property to public purposes, so far as to inquire whether that court prescribed any rule of law in disregard of the owner's right to just compensation. But in this respect we quote the restriction placed in the opinion then filed (p. 246):

"We say, 'in absolute disregard of the company's right to just compensation,' because we do not wish to be understood as holding that every order or ruling of the state court in a case like this may be reviewed here, notwithstanding our jurisdiction, for some purposes, is beyond question. Many matters may occur in the progress of such cases that do not necessarily involve, in any substantial sense, the Federal right alleged to have been denied; and in respect of such matters, that which is done or omitted to be done by the state court may constitute only error in the administration of the law under which the proceedings were instituted."

While in cases of this kind coming from the Supreme Court of a State, questions of fact passed upon in the state courts are not here open to review, *Egan* v. *Hart*, 165 U. S. 188, and

cases cited in the opinion, it may not be inappropriate to notice that the award of compensation as finally sustained gave to the respondents the sum of $63,000. As the valuation they placed upon the plant, outside of the realty, was only $150,000, and of the realty the like sum of $150,000, though the realty cost in 1871 less than $30,000, and as none of the ground, upon which the plant stood and the business was carried on, was taken by the Depot Company, but only the use of the street in front thereof, and that not so as to exclude them from its use, it is obvious that the award, whether adequate or not, was not one in reckless disregard of their rights.

It is not questioned by counsel that the settled rule of this court in cases of this kind is to accept the construction placed by the Supreme Court of the State upon its own constitution and statutes as correct. *Long Island Water Supply Company* v. *Brooklyn*, 166 U. S. 685; *Merchants' & Manufacturers' Bank* v. *Pennsylvania*, 167 U. S. 461, and cases cited in those opinions. His contention, however, is that the true construction of the constitution and laws of the State, as settled by repeated decisions of its Supreme Court, was wholly disregarded in this case, and that by reason thereof the respondents were denied that equal protection of the laws which is guaranteed by the Fourteenth Amendment to the Federal Constitution. His contentions are grouped under the following heads:

" I. They were denied the fundamental right to have an ascertainment and determination of the amount of compensation and its final payment before being deprived of their property.

" II. They were denied the protection of that guaranty of the state constitution providing that the questions of compensation and necessity should be passed upon by one and the same jury, and of the settled, uniform and unreversed construction of the constitution to that effect by the state judiciary in respect of all other citizens.

" III. They were denied the protection of a trial on the questions of necessity and compensation by the tribunal

guaranteed by the constitution of the State, in accordance with the settled, uniform and unreversed construction of that constitution in respect of all other citizens.

" IV. They were denied that measure of just compensation for their property taken, guaranteed by the constitutions, Federal and state, as the same was and is accorded to all other persons than themselves.

" V. They were denied a hearing and deprived of a hearing guaranteed by the Constitutions, Federal and state, as ' due process of law,' when summoned into court as appellees to defend their property, rights and themselves from imputations upon them.

" VI. Finally, having been deprived of their property sought by the railroad company for its purposes, their personal assets of the value of one hundred and ten thousand (\$110,000) dollars were taken from them under the color of a judgment and process unknown to the constitution and statutes of Michigan, and unknown to jurisprudence, whereby they were deprived of their property without ' due process of law.' "

Attention is called to the fact that while upon the return of the first verdict the respondents moved to confirm it, which motion was denied by the circuit court and the verdict set aside, yet after the decision of the Supreme Court awarding the writ of mandamus, they did not renew that motion; that the petitioner alone asked for confirmation, though, as expressly stated, for the purpose of taking an appeal to the Supreme Court; that, after the order of confirmation had been entered, it paid the amount of the award to the respondents, which sum was accepted by them, and that thereupon it took possession of the property and has since continued in undisturbed possession and use. It is insisted that such payment and taking possession created under the constitution and statutes of Michigan a finality so far as the Depot Company was concerned, and that to this effect had been the repeated adjudications of the Supreme Court of the State. The argument is that the property owner has a constitutional right to have the amount of his compensation finally determined and

paid before yielding possession; that the party seeking condemnation (in this case the Depot Company) cannot be let into possession until after all question as to the compensation has been finally settled, and the amount thereof paid; that it cannot take advantage of one report or verdict, pay the sum fixed by it, obtain possession, and still litigate the question of amount; that if it does then pay and take possession its right to further litigate is ended. But the Supreme Court of the State held against this contention, and we must assume therefrom that it is not warranted by the constitution and statutes of the State. Indeed, the language of that constitution is "made or secured." Does this amount to a denial of the right to that protection to property which is guaranteed by the Fourteenth Amendment to the Federal Constitution? In other words, is it beyond the power of a State to authorize in condemnation cases the taking of possession prior to the final determination of the amount of compensation and payment thereof? This question is fully answered by the opinions of this court in *Cherokee Nation* v. *Southern Kansas Railway*, 135 U. S. 641, and *Sweet* v. *Rechel*, 159 U. S. 380. There can be no doubt that if adequate provision for compensation is made authority may be granted for taking possession pending inquiry as to the amount which must be paid and before any final determination thereof.

Neither can it be said that there is any fundamental right secured by the Constitution of the United States to have the questions of compensation and necessity both passed upon by one and the same jury. In many States the question of necessity is never submitted to the jury which passes upon the question of compensation. It is either settled affirmatively by the legislature, or left to the judgment of the corporation invested with the right to take property by condemnation. The question of necessity is not one of a judicial character, but rather one for determination by the lawmaking branch of the government. *Boom Company* v. *Patterson*, 98 U. S. 403, 406; *United States* v. *Jones*, 109 U. S. 513; *Cherokee Nation* v. *Kansas Railway Company, supra.*

Neither was there anything in the proceedings actually had

before the last jury and in the Circuit Court which conflicts with any mandate of the Federal Constitution. Counsel say that the respondents were entitled to a trial by a jury of inquest, but were forced to trial before a common law jury, presided over and controlled by the circuit judge. But the Constitution of the United States does not forbid a trial of the question of the amount of compensation before an ordinary common law jury, or require, on the other hand, that it must be before such a jury. It is within the power of the State to provide that the amount shall be determined in the first instance by commissioners, subject to an appeal to the courts for trial in the ordinary way; or it may provide that the question shall be settled by a sheriff's jury, as it was constituted at common law, without the presence of a trial judge. These are questions of procedure which do not enter into or form the basis of fundamental right. All that is essential is that in some appropriate way, before some properly constituted tribunal, inquiry shall be made as to the amount of compensation, and when this has been provided there is that due process of law which is required by the Federal Constitution. *Bauman* v. *Ross,* 167 U. S. 548, 593. These considerations dispose of all the objections embraced in the first three contentions of counsel so far as those objections run to the validity of the proceedings actually had, providing those proceedings were warranted by the constitution and statutes of the State.

But it is insisted that those proceedings were not so warranted; that the settled, uniform and unreversed construction thereof by the Supreme Court of the State theretofore forbade them, and hence there was a discrimination against the respondents, and they were denied that equal protection of the laws which the Federal Constitution guarantees. Thus, for instance, it is insisted that the previous rulings of the courts, both trial and Supreme, had been to the effect that a jury called under these condemnation statutes was a jury of inquest and not a trial jury, whereas in this case the ruling was practically to the contrary, and the respondents were compelled to submit their rights to a trial jury, subject to the control of

the presiding judge, as in ordinary common law cases. We deem it unnecessary to review the many authorities from the Supreme Court of Michigan cited by counsel, or determine whether the ruling in this case as to methods of procedure and the true construction of the statute is or is not in harmony with prior decisions of that court. Accepting the contention of counsel, that in this case the Supreme Court of the State has put a different construction on the state statutes from that theretofore given, and has sustained modes of procedure different from those which had previously obtained, still it does not follow that this court has a right to interfere and say that the present ruling is erroneous and the prior construction correct, or that the change of construction works a denial of any fundamental rights. There is no vested right in a mode of procedure. Each succeeding legislature may establish a different one, providing only that in each are preserved the essential elements of protection. The fact that one construction has been placed upon a statute by the highest court of the State does not make that construction beyond change. Suppose it were true, in the fullest sense of counsel's contention, that for a series of years the courts had ruled that the jury in condemnation cases was a jury of inquest, or in the nature of a sheriff's jury — one determining for itself all matters of law and fact, and that in this case, for the first time, they held otherwise, and that such jury was a common law jury, subject to be controlled by the presiding judge, whose duty it was to determine all questions of law, and still, whatever might be thought of the propriety of such a change of construction, there is in it nothing to justify this court in reversing the judgment of the state court and denying the correctness or validity of this last ruling. We fail to see why the presence of the judge with this jury, his assumption of power to control its proceedings, his instructions to it on questions of law, necessarily vitiated the proceedings. Grant that such a course had never been taken before; grant that it had never been held to be a proper proceeding; grant that it was unexpected by counsel, and yet if the judge's rulings and instructions were in themselves correct, and the propriety of

his presence and control be held by the Supreme Court of the State warranted by the statutes, we do not perceive that any right possessed under the Constitution of the United States has been violated.

The question is not presented of a distinct ruling by a state court that one party is entitled to certain rights and the benefits of certain modes of procedure, and that another party similarly situated is not entitled to them. An act of the legislature which in terms gave to one individual certain rights and denied to another similarly situated the same rights might be challenged on the ground of unjust discrimination and a denial of the equal protection of the laws. But that does not prevent a legislature, which has established a certain rule of procedure, and continued it in force for years, from subsequently repealing the act and establishing an entirely different mode of procedure. In other words, there is no absolute right vested in the individual as against the power of the legislature to change modes of procedure. And a similar thought controls where the courts of the State have construed a statute as prescribing one form of procedure, and parties have acted under that construction, and then subsequently the same court has held that the statute was theretofore misconstrued, and really provided a different mode of procedure. This last adjudication cannot be set aside in the Federal courts on the ground of an unjust discrimination or a denial of the equal protection of the laws.

We, of course, do not mean to affirm that there has been by the Supreme Court of the State such a change of adjudication. We simply in this respect accept the contention of counsel for the respondents, and hold that, even if the facts be as claimed by him, they furnish no ground for interference by this court. It should be noticed in passing, however, that nearly all, if not absolutely all, of the cases which he cites from the Supreme Court of Michigan arose under the provisions respecting condemnation in the General Railroad Act, while these proceedings were had under the Union Depot Act, and, although the two acts may be substantially similar, yet this adjudication is under a different statute from that

under which most, if not all, of the prior decisions were made.

Passing now to the fourth point. Under this it is claimed that the trial judge gave to the jury an improper measure of damages. During the argument of counsel for the respondents this colloquy took place, as appears from the record:

"COURT: A question which arises in my mind is this: There is no question but what the Backuses are entitled to full compensation for such damages as they may suffer, but does not the other rule also attach, and that is, that the jury are not in any way to consider any speculative damages or any probable damages?

"MR. DICKINSON: They can only consider the damages which are actually shown, but the other rule follows, may it please your honor, that they are not to estimate those damages for a year, or estimate the present injury done by the railroad, but they must assume that the railroad is running to its maximum capacity, that it has other railroads, that it may double, treble or quadruple its trains, so far as that is concerned, and they must estimate the damage for the future time, not for a year or three years or five years or ten years.

"COURT: That is undoubtedly true to a certain extent, but the question that I have thought about considerably within the last few days is in regard to the testimony which was admitted in the case in regard to their profits, the profits of their business. Do they not come within the rule which applies in regard to speculative damages?"

Afterwards, when the counsel for petitioner was making his argument, he said:

"In other words, if the court please, the question as to what business is carried on there, and as to how profitable an institution it might be is merely an element to be considered in establishing the market value of the property."

Upon which the judge made this comment:

"In other words, if a profitable business is carried on in connection with a certain site, the profitableness of the business itself must be taken into consideration by the jury in estimating the value?"

After the arguments were over the judge charged the jury as follows:

" Upon this question, viz., compensation or damages, what I have to say must necessarily be in a broad and the most general way. This is a question for you, and from the very nature of a proceeding of this character, you are vested with large powers and great discretion. These powers and this discretion should not be exercised arbitrarily, nor without proper regard for substantial justice. You should bear in mind that the greater the power, the more jealous is the law of its careful exercise, and the greater is the responsibility of the persons vested therewith. You should exercise a cool, careful, intelligent and unbiassed judgment. The compensation or damages must be neither inadequate or excessive, and your award must not furnish a just inference of the existence of undue influence, partiality, bias and prejudice, or unfaithfulness in the discharge of the duties imposed upon you. You must, however, remember that the respondents' property is taken, or its enjoyment interfered with, under the so-called power of eminent domain, a power somewhat and necessarily arbitrary in its character, and that where this is done the party whose property is taken, or whose enjoyment or use of the property is interfered with, is entitled to full compensation for the injury inflicted. While the allowance to be made should be liberal, still it must not be unreasonably exorbitant or grossly excessive. It should be a fair and liberal allowance and full and adequate compensation for the damages inflicted. You should not allow too little nor should you allow too much. Your award should be based upon that which is real and what is substantial, and not upon what is either fictitious or speculative. You should look at the condition of things as they exist. Under the constitution and laws the right to take another's property for public uses, the power to exercise the right of eminent domain, is a part of the law of the land, but when this power is exercised it can only be done by giving the party whose property is taken or whose use and enjoyment of such property is interfered with, full and adequate compensation, not excessive or exorbitant, but just compensation.

" I shall not call attention to any particular part of the testimony in the case : the responsibility of its application and the weight to be given it rests with you, always regarding that which is real and substantial and disregarding that which is fictitious and speculative ; treating conditions as they have been shown and as they are, without speculating as to what might possibly happen or occur, taking conditions as you find them, and the natural and probable consequences following such conditions."

And this was all which was said in reference to the measure of compensation. Now, it is insisted by counsel that the profits which the manufacturing plant was making were to be taken into consideration by the jury in awarding compensation, inasmuch as the business of that plant was seriously interrupted, if not practically destroyed, by this condemnation ; that inasmuch as the query was suggested by the judge during the argument whether profits did not come within the rule as to speculative damages, the failure to charge distinctly that they were proper subjects of consideration was equivalent to an instruction that they were not to be considered, and that, therefore, the true rule of compensation was not given to the jury.

It is evident that the judge did not attempt to define the several elements which enter into the general fact of compensation, or the various matters to be considered by the jury. He simply charged generally that as this was an arbitrary taking of the property of the respondents they were entitled to full compensation, and left to the jury the duty of determining what should be such compensation, telling them plainly that they were vested with large powers and great discretion. If it be said that the judge had intimated by his query that the matter of profits came within the rule applicable to speculative damages, it must also be noticed that further on he suggested that the profitableness of a business was to be taken into consideration in estimating the value. It is true he nowhere instructed the jury to make the profits of the business the criterion of value, nor indeed would he have been justified in so doing. The profitableness of the business was undoubtedly a matter to be considered, and so the judge fairly intimated in

these prior colloquies. But the profits of a business are not destroyed unless the business is not only there stopped, but also one which in its nature cannot be carried on elsewhere. If it can be transferred to a new place and there prosecuted successfully, then the total profits are not appropriated, and the injury is that which flows from the change of location.

But beyond this no special instructions were asked by the respondents at the time of the giving of the charge. The statute (§ 3466) provides that the judge "may attend said jury, to decide questions of law." So far as he gave instructions it is obvious that he stated that which was the law, and the real objection is that he did not go further and enter into a more minute description of the elements which were to be taken into consideration by the jury in fixing the amount of compensation; that they may from the colloquies which had taken place during the arguments have drawn improper inferences as to the limit to which they were warranted in going, and that those inferences he failed to correct by specifically stating what matters they should consider. A sufficient answer is that the respondents did not ask any further instructions. All they did was to except to what had been stated. By well-settled rules no appellate court would under such circumstances be required to set aside the judgment of the trial court. *Shutte* v. *Thompson*, 15 Wall. 151, 164; *Mutual Life Ins. Co.* v. *Snyder*, 93 U. S. 393; *Texas & Pacific Railway* v. *Volk*, 151 U. S. 73; *Isaacs* v. *United States*, 159 U. S. 487.

But a more complete and satisfactory answer is that whatever error there may have been affords no ground for the interference of this court. The respondents were not thereby deprived of any rights secured by the Federal Constitution. They were not denied "due process of law." The proceedings were had before a duly constituted tribunal, in accordance with the declared law of the State, with full opportunity to be heard. Nor were they denied "the equal protection of the laws." The rule as to the necessity of asking special instructions was administered in this case no differently than in others. *Marchant* v. *Pennsylvania Railroad*, 153 U. S. 380.

The error, if any there be, was not one "in absolute disregard of their right to just compensation," but was only error in the administration of the law under which those proceedings were instituted. As clearly pointed out in *Chicago, Burlington & Quincy Railroad* v. *Chicago, supra*, it is not every error occurring in a state court in the administration of its law concerning condemnation of private property for public purposes that opens the door to review by this court. We are not called upon to search the record simply to inquire whether there may or may not have been errors in the proceedings. Our limit of interference is reached when it appears that no fundamental rights have been disregarded by the state tribunals.

Under the fifth head counsel presents two matters.:

"(1) The denial by the Supreme Court of the State of a hearing on the substantial and essential question, of whether counsel for plaintiffs in error abused their privilege as counsel by arguing to the jury on the question of necessity that the margin of the depot grounds that belonged to the Michigan Central road could be taken for the elevated structure; and (2) the reversal of the unanimous judgment of the Supreme Court of the State in 89 Michigan, 209, without a rehearing, by the judgment in 92 Michigan, 33."

With reference to the first, it is enough to say that the respondents did not appeal to the Supreme Court, and that under section 3468 it would seem that that court was called upon to consider only such objections as had been particularly specified. "Either party may appeal, by notice in writing;" "such notice shall specify the objections;" "the Supreme Court shall pass on such objections only, and all other objections, if any, shall be deemed to have been waived." No objection to the finding of the jury as to the question of necessity had been made by the appellant, and therefore was to be treated as waived. Under those circumstances it cannot be said that the Supreme Court deprived the respondents of any rights by refusing to hear counsel in respect to the question of necessity, or connected with its determination.

With regard to the second, technically the decision on the mandamus proceeding and that on the appeal did not conflict.

The writ of mandamus directed the circuit judge to set aside the order which he had entered vacating the award.  It thus in effect declared that that judge ought not to have made such an order.  On the appeal the Supreme Court itself ordered that the award be set aside, and a new jury empanelled, and remanded it to the Circuit Court for such new appraisal.  This is within the letter of the statute, (§ 3468,) " on the hearing of such appeal, the court may direct a new appraisal before the same or new commissioners or jury, in its discretion."  The decision by the Supreme Court that it had power to set aside the verdict and order a new appraisal was not a reversal of a ruling that the Circuit Court had no such power, although it may suggest consequences somewhat singular.  Appreciating that fact, in the last opinion the court declared that in the former decision its language restricting the power of the Circuit Court had been too strong.

Coming now to the last point, the Supreme Court held that as upon the second appraisal the damages were less than. those awarded on the first, and the amount of the first had been paid to the respondents, the petitioner was entitled to a judgment for the difference.  The language of the statute (§ 3468) is " but if the amount is diminished, the difference shall be refunded to the company by the party to whom the same may have been paid, and judgments therefor and for all costs of the appeal shall be rendered against the party so appealing."  It may be that this language is not entirely apt, for in this case the party appealing was not the landowner but the Depot Company, and so it cannot be said that judgments were rendered against " the party appealing."  But the true intent of the statute is obvious, and at any rate we are bound to accept the construction placed upon it by the Supreme Court, and hold that it means that if the last appraisal was less than the first and the amount of the first.had been paid, the company was entitled to recover the difference from the party to whom it had been paid.  Nothing is said, it is true, in the statute about execution, but the Supreme Court ruled that under the general. statutes the recovery of the judgment carried with it a right to an execution.

These are all the questions in this case. We find nothing in them which justifies an interference by this court with the proceedings of the state courts; nothing in which it can be said that any ruling of those courts was in absolute disregard of the respondents' right to compensation. The judgment must, therefore, be

*Affirmed.*

Mr. Justice Harlan dissenting.

Did the trial court prescribe any rule of law for the guidance of the jury that was in absolute disregard of the right of the plaintiffs in error to such compensation?

In *Chicago, Burlington & Quincy Railroad* v. *Chicago,* 166 U. S. 226, 241, it was held that " a judgment of a state court, even if it be authorized by statute, whereby private property is taken for the State or under its direction for public use, without compensation made or secured to the owner, is, upon principle and authority, wanting in the due process of law required by the Fourteenth Amendment of the Constitution of the United States, and the affirmance of such judgment by the highest court of the State is a denial by that State of a right secured to the owner by that instrument."

Before proceeding with his argument to the jury, Mr. Dickinson, the attorney for the plaintiffs in error, called the attention of the trial court to some of the principles which, in his judgment, should control the ascertainment of the just compensation to which they were entitled. Addressing the court in the presence of the jury, he said: " Now, as to what is compensation, I refer your honor to the case of *The Grand Rapids & Indiana Railroad* v. *Heisel,* in 47 Michigan, 398: 'It need hardly be said that nothing can be fairly termed compensation which does not put the party injured in as good a condition as he would have been if the injury had not occurred. Nothing short of this is adequate compensation. In the case of land actually taken, it includes its value, or the amount to which the value of the property from which it is taken is depreciated, and in *Jubb* v. *Hull Dock Co.,* 9 Q. B. 443, it was held, where the property taken was a brewery in

operation, the damages included the necessary loss in finding another place of business.   In cases where damage is by injury aside from the actual taking of property, the rule has been to make the party whole as nearly as practicable, and where it affected the rental value or enjoyment the same principle has been applied as in other cases.   There is no reason, and so far as we can discover, no law which allows the wrongdoer to cast any portion of an actual and appreciable loss on the party whom he injures.'   (In this case the same rule of damages would apply as in the Grand Rapids and Indiana case, and the suit was brought for damages, and the question was what was compensation.)   'In such a case as this, it is in the power of the company and always has been to have the compensation settled once for all, and to get any benefit which the law attaches to such a method of ascertainment.   Until this is done the possession is a continual wrong.'"

At this point the court interrupted the argument of counsel with this observation: " A question which arises in my mind is this: There is no question but what the Backuses are entitled to full compensation for such damages as they may suffer, but does not the other rule also attach, and that is, that the jury are not in any way to consider any speculative damages or any probable damages?"   To this counsel made the following response : " They can only consider the damages which are actually shown, but the other rule follows, may it please your honor, that they are not to estimate those damages for a year, or estimate the present injury done by the railroad, but they must assume that the railroad is running to its maximum capacity, that it has other railroads, that it may double, treble or quadruple its trains, so far as that is concerned, and they must estimate the damage for the future time, not for a year or three years or five years or ten years." The court then said: " That is undoubtedly true to a certain extent, but the question that I have thought about considerably within the last few days is in regard to the testimony which was admitted in the case in regard to their profits, the profits of their business.   Do they not come within the rule which applies in regard to speculative damages ? "

Counsel then observed: "Not at all, your honor. If the profits are shown and the business is destroyed, you can only show it by the effect upon the business, and upon that point I call your honor's attention to the unanimous opinion of the Supreme Court delivered by Mr. Justice Campbell in the case of *Grand Rapids & Indiana Railroad* v. *Weiden,* 70 Michigan, 390, 393: 'Under our present constitution there is never any presumption that a railroad is necessary, or that any particular land ought to be given up to its uses. Every landowner therefore has a perfect right to object to giving up his land, and is not confined to objections depending upon price or value. . . . And a road already established has no better claim than any other to extend or change its lines. Although railroads are allowed by public policy to condemn lands, because they cannot exist otherwise, nevertheless the enterprise is, under our laws, which prohibit public ownership of railways, one of private interest and emolument, and must show its claims to legal assistance.' Now upon the question of profits: 'We are bound to see that parties are not deprived of their property without necessity, or without full compensation for being compelled to relinquish it. And, while respect is due to the honest action of juries, it is not conclusive, and is subject to comparison with the facts in the record. Both of the appellants were using their property in lucrative business, in which the locality and its surroundings had some bearing on its value. Apart from the money value of the property itself, they were entitled to be compensated so as to lose nothing by the interruption of their business and its damage by the change. A business stand is of some value to the owner of the business, whether he owns the fee of the land or not, and a diminution of business facilities may lead to serious results. There may be cases when the loss of a particular location may destroy business altogether for want of access to any other that is suitable for it. Whatever damage is suffered must be compensated. Appellants are not legally bound to suffer for petitioner's benefit. Petitioner can only be authorized to oust them from their possessions by making up to them the whole of their losses.' That goes directly upon the question which

your honor suggests.    Now I shall not take time to refer to
the other cases."

I cannot doubt, from what passed between the court and
counsel in the presence of the jury, that the court meant to
characterize profits from the business of the parties owning
the real estate as speculative damages.

After the counsel for the parties concluded their argument
to the jury upon the whole case, the trial judge delivered a
carefully prepared charge, in which he said: "The question,
and the only question before you for your determination, is
that of compensation, and of compensation only.    Your duty,
and your only duty, is to ascertain and determine what com-
pensation or damages ought justly to be paid by the Fort
Street Union Depot Company to the respondents for the real
estate, property, franchises, easements and privileges described
in the petition, viz.: 1. The amount to be allowed to Absalom
Backus, Jr., as the owner of the fee of the land described.
2.  The amount to be allowed to A. Backus, Jr., & Sons, a
corporation, as tenants in possession of such lands.  Upon this
question, viz., compensation or damages, what I have to say
must necessarily be in a broad and the most general way.
This is a question for you, and from the very nature of a pro-
ceeding of this character you are vested with large powers and
great discretion.    These powers and this discretion should not
be exercised arbitrarily, nor without proper regard for substan-
tial justice.    You should bear in mind that the greater the
power the more jealous is the law of its careful exercise, and
the greater is the responsibility of the persons vested there-
with.    You should exercise a cool, careful, intelligent and un-
biassed judgment.    The compensation or damages must be
neither inadequate or excessive, and your award must not
furnish a just inference of the existence of undue influence,
partiality, bias and prejudice, or unfaithfulness in the discharge
of the duties imposed upon you.    You must, however, remem-
ber that the respondents' property is taken, or its enjoyment
interfered with under the so called power of eminent domain,
a power somewhat and necessarily arbitrary in its character,
and that where this is done the party whose property is taken,

or whose enjoyment or use of the property is interfered with, is entitled to full compensation for the injury inflicted. While the allowance to be made should be liberal, still it must not be unreasonably exorbitant or grossly excessive. It should be a fair and liberal allowance and full and adequate compensation for the damages inflicted. You should not allow too little nor should you allow too much. Your award should be based upon that which is real and what is substantial, and not upon what is either fictitious or speculative. You should look at the conditions of things as they exist. Under the constitution and laws the right to take another's property for public uses, the power to exercise the right of eminent domain, is a part of the law of the land, but when this power is exercised it can only be done by giving the party whose property is taken or whose use and enjoyment of such property is interfered with, full and adequate compensation, not excessive or exorbitant, but just compensation."

Is it not clear that the trial judge, while indulging in very general language as to the duty of the jury not to allow too much or too little compensation, gave the jury to understand that compensation was to be ascertained upon the basis only of the ownership by Absalom Backus, Jr., of the fee in the land described, and of the rights of A. Backus, Jr., & Sons as tenants in possession, excluding damages to the business of the plaintiffs in error, which would arise from the condemnation of their property rights? The jury were, in effect, instructed that the profits derived by them from their business were to be excluded, from consideration as being " fictitious or speculative."

That he was so understood by counsel for the plaintiffs in error is manifest from the circumstance that, immediately upon the charge being concluded, he made the following exceptions to it : " We except to that part of the charge of the court wherein he says that the damages are to be confined to the damage to the real estate described and the improvements upon it; whereas, in our view, the damages are to the entire plant, including the injury to the business from the impairment of the mill as affecting its adjuncts, the lumber yard and

the storehouse.  .  .  .  To what is said by the court as to avoiding the giving of speculative damages, in view of what has been said before by the court in regard to taking into consideration the profits, I refer to what has been said upon the records in the course of the testimony and upon the argument, expressing the views of the court against taking into consideration the profits.   We except to the refusal of the court to charge as I requested in the language or in the substance, according to the decisions of the Supreme Court, which I read in full upon the opening of my argument and called attention of the court to it, especially to the expression of Campbell, J., in delivering the opinion of the court in *Grand Rapids & Indiana Railroad* v. *Weiden,* 70 Michigan, 395, 398."

If the trial judge did not intend to say to the jury that injury to the business of the plaintiffs in error was to be deemed speculative, and therefore to be excluded from consideration, he would instantly have said that no such impression was intended to be . made as that indicated by the exceptions taken to his charge.

The views expressed by counsel for the plaintiffs in error as to the principles which should guide the jury in the matter of compensation were sustained by the authorities.   In addition to the cases in 47th and 70th Michigan above referred to, reference may be made to many others decided by the Supreme Court of Michigan.

In *Commissioners* v. *Chicago &c. Railroad,* 91 Michigan, 291, which was a case of the condemnation of the lands of a railroad company, that court said: "If, therefore, their adjoining land is rendered less valuable by the location of a public highway, or another railroad across its property, there is no reason why they should not recover compensation therefor.   Situated near this crossing is a small tract of land used for warehouse purposes.   It is insisted by the respondents that, by reason of this crossing, this land, with the warehouse thereon, is rendered less available and less valuable for the purposes for which it was constructed and used.   This was a proper element of damage, and should have been submitted to the jury."

At the same term the court, in *Commissioners* v. *Moesta,*

91 Michigan, 149, 154, quoted with approval what had been said in *Grand Rapids Railroad Co.* v. *Weiden*, 70 Michigan, 295, saying: "The constitutional provision entitling the owner of private property, taken for public use, to just compensation, has uniformly been construed to require full and adequate compensation. The rules to be applied in fixing the compensation are not necessarily the same as obtain in fixing damages in actions upon contracts. The correct rule of compensation in such cases is more nearly analogous to the remedy afforded in an action in tort in which property rights have been interfered with without the owner's assent. In such cases damages for the interruption of the owner's business are allowed. *Allison* v. *Chandler*, 11 Mich. 549." In *City of Detroit* v. *Brennan*, 93 Michigan, 338, the court reaffirmed the doctrine of the former cases, that the full measure of compensation and the injury done to the business should be allowed, and said: "The law considers the rights of the property and business carried on by the respondent as of equal consideration and entitled to as much protection as the right of the city to take the property and interfere with the business; and will not permit the property to be taken and the business to be interfered with, unless an actual public necessity exists for the making of the improvement. . . . The element of damages are: (1) The value of the property taken for the opening of the street; the injury to the works and property not taken, and left in the parcel of land from which the property is taken; (2) the injury to the business of the owner; (3) compensation for all prospective loss or injury resulting from the opening of the street, and the taking of the property for that purpose."

See also *Grand Rapids &c. Railroad* v. *Chesebro*, 74 Michigan, 466, where the court said: "An owner has a right to be indemnified for anything that he may have lost. The farming test, which is the one petitioner sought to apply, would be of no particular use in a great many cases of suburban lands. . . . The mere taking of four acres for a right of way could not be regarded, in any sensible point of view, as compensated by one tenth of the value of the forty acres, taking acre for acre.

The damages in such a case must be such as to fully make good all that results, directly or indirectly, to the injury of the owners in the whole premises and interests affected, and not merely the strip taken." Further: " The jury here, as in all cases where no certain measure exists, must trust somewhat to their own judgment. That is one of the purposes for which juries of inquest are provided. They are expected to view the premises and use their own senses. . . . But the purpose throughout is to give all the damages which they reasonably discover, past or present, and to result, but no more. No one can read this record without seeing that the jury did not deal fully with the case. It is manifest that they gave no damages beyond what they assumed to be the price of four acres by the acre. . . . It cannot be said there is any real conflict as to the damages arising from the cutting off one part from the other of the forty acres, and this was left out altogether, unless they regarded the proofs of value wantonly, which we cannot believe." See also *Pearsall* v. *Supervisors,* 74 Michigan, 558; *Barnes* v. *Michigan Air Line,* 65 Michigan, 251; *Grand Rapids &c. Railroad* v. *Railroad,* 58 Michigan, 641, 648; *Toledo &c. Railway* v. *Detroit &c. Railroad,* 62 Michigan, 564; *Commissioners* v. *Chicago Railroad,* 91 Michigan, 291; *Commissioners* v. *Chicago &c. Railroad,* 90 Michigan, 385; *City of Grand Rapids* v. *Bennett,* 106 Michigan, 528.

Without referring to other matters discussed at the bar and in the elaborate brief of counsel, I place my dissent from the opinion and judgment of the court upon the ground that the trial court committed error in its charge to the jury as to the principles which should guide them in determining the just compensation to which the plaintiffs in error were entitled. The rules laid down by the Supreme Court of Michigan, in the cases above cited, as to what was just compensation, were, I think, in accord with the principles that obtain in the courts of the Union when determining the just compensation to be made for private property taken for public use.

Mr. Justice Brown took no part in the decision of this case.