## *In re* SECRETARY OF TREASURY OF UNITED STATES.

*(Circuit Court, S. D. New York.   March 14, 1891.)*

EMINENT DOMAIN—CONDEMNATION BY UNITED STATES—PRACTICE.
    Act Cong. Aug. 1, 1888, (25 St. at Large, 357,) provides that condemnation suits in behalf of the United States to acquire lands for public use are to be conducted, as to matters of practice, in the federal court having jurisdiction, in conformity, "as near as may be, to the practice, pleadings, forms, and proceedings existing at the time in like causes in the courts of record of the state" in which such federal court is held. *Held*, that the practice to be followed is that provided for condemnation suits in general, and in condemning land in New York the exceptional proceeding provided for the board of education of New York city by Laws 1888, c. 191, cannot be adopted.

Proceeding to Condemn Lands.
*Edward Mitchell*, U. S. Atty., for petitioner.
*Shipman, Larocque & Choate, Geo. G. De Witt, Jr., John H. Bird, N. B. Sanborn, J. Frederic Kernochan, Hand & Bonney, Platt & Bowers, Anderson & Howland, Vanderpoel, Cuming & Goodwin,* and *Strong & Cadwalader,* for defendants.

WALLACE, J.   This is a proceeding by the secretary of the treasury to acquire real estate in New York city for the United States for the site of a new custom-house, under the authority conferred on him by the act of congress of September 14, 1888.   By section 2 of that act, the secretary of the treasury is authorized, in his discretion, "in lieu and stead of a purchase of a site for an appraisers' warehouse only to purchase or acquire by condemnation a site embracing an area sufficient for the erection of a new custom-house building in addition to said appraisers' warehouse, or to purchase two sites in the vicinity of each other in said city of New York suitable for both of said purposes."   The section appropriates a specified sum of money, "to be available only in case the single site for both custom-house and appraisers' warehouse, or two sites in the

vicinity of each other, shall be purchased or acquired as herein set forth." Section 3 of the act provides that no part of the sum appropriated shall be expended for any site, "until the state of New York shall cede to the United States exclusive jurisdiction over the same during the time the United States shall be or remain the owner thereof, for all purposes except the administration of the criminal laws of said state and the service of civil process therein." Since the secretary of the treasury instituted the present proceeding, and after he had caused a map to be filed for that purpose of the real estate now sought to be acquired in the office of the register of the city and county of New York, congress has enacted that a new custom-house shall be erected in the city of New York on the site "which has been selected and designated therefor by the secretary of the treasury." This act authorizes him to sell the present custom-house property in the city of New York, and appoint five commissioners, who shall be charged with the erection and construction of the new building. Owners of the real estate have appeared to interpose objections to the proceeding. They object that the secretary of the treasury is not authorized to acquire title by condemnation, unless in the event of the selection of a single site for both an appraisers' warehouse and a custom-house; that he is not authorized to proceed until after advertising for proposals; that a cession of jurisdiction over the property by the state of New York is a condition precedent to his right to proceed; and that the present proceeding does not conform, as by law it must, to the proceedings in like causes in the courts of record of this state. These objections have received the consideration which they deserve, in view of the importance of the interests affected by the proceeding. None of them, except the last, seems to have sufficient merit to require discussion. The last is a serious one, and in my judgment is insuperable.

Condemnation suits in behalf of the United States to acquire lands for pubic use are, by the act of congress of August 1, 1888, to be conducted, as to matters of practice in the federal court having jurisdiction, in conformity, "as near as may be, to the practice, pleadings, forms, and proceedings existing at the time in like causes in the courts of record of the state" within which such federal court is held. 25 St. at Large, 357. It has been decided by the supreme court that a proceeding to condemn land for public use is a suit at common law. *Kohl* v. *U. S.*, 91 U. S. 367. Consequently, irrespective of the terms of the federal condemnation act, conformity of procedure is required, as in all suits at common law, by section 914 of the Revised Statutes of the United States. Were it not that the procedure to be pursued is thus defined by congress, it would be competent for the federal courts to adopt any appropriate procedure which would afford the parties interested in the lands an opportunity to present evidence and be heard respecting the value of their property; and this court would therefore be at liberty to adopt or reject, at its option, any procedure prescribed by the laws of the state. The right of eminent domain may be exercised by the general government within the several states without their permission, and cannot be trammeled by

any obnoxious restrictions by state laws; and, in the absence of regulation by congress, may be asserted by any method to obtain lands for public use which was recognized as appropriate when the federal constitution was adopted. But congress has seen fit to declare that when a suit is brought it shall be conducted modally as to matters of form and practice, in conformity to the practice existing in like suits in the state court; and the question now is whether the procedure which has been adopted in the present case does so conform.

The legislature of this state in 1890 revised the laws for the condemnation of real property for public use, and embodied their revision under the title of the "Condemnation Law" in the Code of Civil Procedure. Sections 3357–3384. These Code provisions regulate the practice, pleadings, form, and mode of proceeding in the courts of this state in all causes for the condemnation of real property for public use. Section 3383 repeals all pre-existing acts, and parts of acts; saving, however, and exempting from the repeal all proceedings in behalf of the city of New York, and any of its boards or departments. This exemption includes the board of education of the city of New York, and saves to it a proceeding to acquire lands for school-sites, authorized by chapter 191, Laws 1888. In instituting the present application, the law officers of the government have adopted the proceeding thus specially saved to the board of education of New York city by the law of 1888. The present proceeding, therefore, conforms to the practice in the state court in an anomalous case, or a class of excepted cases, and does not conform to that in similar causes generally in the state courts. It may be conceded that a suit or proceeding to condemn land for a school-site is a "like cause" to the present; but so are all the proceedings or suits to which the Code provisions apply. The cause of action in all is the assertion of a right to condemn property for a public use. But the precise question is whether the existing practice in the courts of this state, to which this court is to conform as near as may be, is that which obtains in like suits generally, or that which obtains in some special and excepted class. What is meant by the words "conform as near as may be" has been judicially declared by the supreme court in *Railroad Co.* v. *Horst*, 93 U. S. 291. The language is intended to devolve upon the federal courts the power to reject any subordinate provisions in state statutes regulating practice which in their judgment would unwisely incumber the administration of the law, or tend to defeat the ends of justice in the federal tribunal. Subject to this reservation of discretionary power, the federal courts, in condemnation suits and common-law suits, are to conform by adopting the practice and procedure which the state courts would follow in a similar suit. This they cannot do with any certainty, unless the rule of conformity is found in the practice and procedure in similar causes generally, and not in that which may obtain abnormally, or in similar causes exceptionally. Illustrated by the present case, if the state itself, or any of its municipal corporations, except New York city, or any other corporation or natural person, authorized by law to acquire real property for a public use, institutes condemnation proceedings in the courts of this state, the prac-

tice and procedure in the suit are uniform, while each of the excepted proceedings has a law and practice peculiar to itself; and, unless the general law supplies the rule of conformity, this court would be wholly at a loss to determine which one of the several excepted and special laws should control its practice and proceedings.

There are important and radical differences between such a proceeding as the board of education is authorized to adopt and the suit for condemnation which the Code prescribes for suitors generally.   These are found in the provisions for giving personal notice of the proceeding to property owners, for protecting the rights of absent or unknown owners, and for securing the payment of the compensation awarded to the owners before they are compelled to surrender possession of their property.   The provisions of the general law are carefully framed to protect the rights of the property owners.   If they are unnecessarily stringent in that behalf those of the special act in favor of the board of education are unnecessarily lax.   By the board of education act, notice of the proceeding is given by advertisement only.   If the owners are not known, or are not fully known, a general award is made without specifying what they are entitled to respectively.   The owners are dispossessed before their compensation is paid or deposited with the court.   Thus it may happen that they do not have an opportunity to be heard as to the value of their property.   They are left to a litigation between themselves as to the part that each is to receive; and, in any event, are left to collect their compensation from the comptroller of the city.   If this court were at liberty to exercise any discretion in selecting a proceeding to be adopted in a case like the present, it certainly would not approve one in which the property owners can be dispossessed before their awards are paid, and may be left to collect their compensation of the United States by such remedies as the government affords.   There are provisions in the general condemnation law which would doubtless embarrass the government in a condemnation suit, if a strict compliance with them were necessary.   And in selecting the present proceeding the law officers of the government have probably considered that the United States ought not to be compelled to resort to a suit in which the petition must state the facts showing the necessity of the acquisition of the property for public use, and that there has been an effort to acquire it by purchase. Undoubtedly the Code provisions are designed to permit the property owners to contest the necessity of the acquisition of the property sought to be condemned, and to defeat a condemnation, unless prior to instituting suit there has been a reasonable attempt to acquire it by purchase. But these are matters which go to the substance of the right to acquire property by condemnation.   They are not matters of form or practice or pleading; they are of the essence of the cause of action.   Consequently if these obnoxious averments should be omitted in a petition in behalf of the United States, it would seem that the petition would nevertheless conform as near as may be to the requirements of the Code.   The application is dismissed.