UNITED STATES v. ALEXANDER et al.
No. 62 Civil.

District Court, W. D. Virginia, at Roanoke.
Oct. 23, 1942.

R. R. Rush, Asst. U. S. Atty., of Roanoke, Va., for the United States.

Stuart B. Campbell, of Wytheville, Va., for defendants.

PAUL, District Judge.

The question before me is whether the United States Government, in acquiring land in this district by condemnation, may maintain a suit in this court under the provisions of an act of the General Assembly of Virginia, approved March 16, 1918, Acts of Assembly 1918, p. 509, sometimes referred to as the Federal Condemnation Act, and appearing as Sections 4388a to 4388v, inclusive, of the Code of Virginia; or whether, in any such condemnation proceeding, it is required to proceed under the provisions of what is known as the general condemnation act of Virginia, being Sect. 4360 to 4387 inclusive of the Code.

The petition to condemn was filed in this court February 10, 1941, and simultaneously the government filed a declaration of taking and paid into court the sum of $14,150.00 as the amount of just compensation estimated by the government.

The petition, after formally alleging the necessity for the acquisition of the land and the nature of the interest sought to be

acquired and describing the land, asserted the apparent owners and further "that there are other persons who are or may be interested in this action and who may have or claim some right, title, interest or lien * * *" and prayed that any such persons be made parties as "unknown owners". The prayer of the petition, so far as it related to any ascertainment of compensation, was "That the Court ascertain and assess the value of the property herein sought to be taken and condemned, and of each and every separate estate or interest therein".

The language of the prayer quoted above is the same as that used by government counsel in various petitions in condemnation heretofore filed in this court, all of which, without exception, have been conducted in accordance with the procedure provided by the general condemnation act of the state, Sections 4360 to 4387, inclusive, Code of Virginia. Under this latter statute, the filing of the petition would have been followed with notice to the landowner of application for appointment of commissioners to assess the value of the land to be taken (Sect. 4365). Under the Act of March 16, 1918, the filing of the petition would be followed by a motion asking the court to fix a day certain on or before which all persons claiming any interest in the lands should appear and assert their claims, and to give notice thereof (Sect. 4388g).

Neither in the prayer of the petition nor elsewhere in it was there any indication as to which statute the petitioner purported to proceed under or which procedure it intended to invoke for a determination of the value of the land. Certainly there was nothing to indicate that it intended to depart from its long established practice of utilizing the general act under which it has condemned many hundreds (even thousands) of tracts of land in this district in the last twenty years and from the use of which it had not departed in a single instance during that time. As a matter of fact, after filing its petition, the petitioner failed to follow promptly the procedure under either statute and the petition rested for many months without either a motion for appointment of commissioners or a motion for notice to interested parties for assertion of their claims. No criticism of this delay is implied because it is known that the work of the district attorney's office is congested, particularly by condemnation work, and because prolonged efforts, which finally failed,

were being made to agree with the landowner upon the value of the property.

On June 17, 1942, the petitioner, pursuant to the provisions of Sect. 7 of the so-called Federal Condemnation Act (Acts of Assembly 1918, p. 509, Sect. 4388g, Va. Code), gave notice to the defendant landowner that it would on June 29, 1942, present its petition to the court and move for an order of notice to claimants. This was the first indication of record that petitioner intended to invoke the procedure provided by this act. On June 29th, the defendant appeared and moved to dismiss the proceeding for lack of jurisdiction on the ground that the statute under which petitioner was attempting to proceed was applicable only where the proceeding was instituted in the courts of the State of Virginia. This motion was tentatively denied and a day was fixed for inclusion in the notice to claimants as the date on or prior to which they should appear and file claims. However, the court indicated that its decision on the motion to dismiss was not final and that the motion might be renewed prior to any hearing on the issues. Notice to claimants issued from the Clerk's office returnable July 21st, and on July 18th the defendant renewed her motion to dismiss, including therein additional and more detailed grounds. She likewise answered putting in issue the value of the lands and other matters, the determination of which depends on a final hearing.

With this statement as to the course of the prior proceedings, we come to the question raised by the motion to dismiss and which has been stated in the opening paragraph. The grounds of the motion, briefly stated, are:

1. That the statute under which petitioner seeks to proceed is applicable only to proceedings instituted in the state court.

2. That the Act of March 16, 1918, is special legislation in contravention of the Constitution of the State of Virginia.

3. That the Act of March 16, 1918, violates the Constitution of Virginia in that it provides only for fixing the value of the land taken but makes no provision for assessing such damage as may be caused to the residue of condemnee's land by the taking of a portion thereof.

In addition to the above grounds, which attack the right of petitioner to proceed under the Act of March 16, 1918, and

question the constitutionality of that act, the defendant advances two other objections touching the sufficiency of the petition and the regularity of the procedure. These are:

4. That the petition fails to allege the existence of any of the grounds enumerated in Sect. 5 of the Act of 1918 (Code, § 4388e) as a basis for condemnation.

5. That even if petitioner is entitled to proceed under the Act of 1918 it was July 7, 1942, that defendant was served with notice to appear as provided in Sect. 7 of the act (Code, § 4388g) and that therefore there was no proceeding pending prior to the date mentioned and the declaration of taking previously filed was without authority of law.

■ The last two objections, neither of which bears on the important controversy here, will first be disposed of in adverse order. Objection No. 5 is without merit. Treating the notice to appear as the means by which the defendant was made a party to the suit (in lieu of the usual process), the objection of defendant is in effect that no suit was pending until process was served and no declaration of taking could be filed until this was done. The right of the government to file a declaration of taking and thereby take possession of land prior to a judicial determination of its value does not rest on principles of law applicable to procedure in civil actions generally. It derives from a federal statute which gives that power. The statute, 40 U.S.C.A. § 258a, 46 Stat. 1421, specifically provides that a declaration of taking may be filed "with the petition" or at any time before judgment; and the declaration of taking herein filed recites that it is based on this authority. The time when the defendant may have received service of process on the petition in no way affects the rights of the petitioner in this respect.

■ The objection (No. 4) that the petition fails to allege grounds justifying condemnation is not without merit, although it probably does not justify dismissal of the petition without giving opportunity for amendment if this can be done. Sect. 5 of the Act of 1918 (Code, § 4388e) provides that the government may condemn when it cannot acquire satisfactory title by deed, for any of certain reasons enumerated. The reasons for the inability to acquire by deed must be alleged in the petition and, without quoting them verbatim, they are (1) the title of the owner is imperfect, or (2) the record title of the owner is defective or encumbered, or (3) it is impracticable to determine the owner with certainty, or (4) to determine with safety the persons to whom compensation should be paid, or (5) some owner of the land is a non-resident of the state, or (6) some owner cannot be found within the state, or (7) the names of the owners are unknown, or (8) the place of residence of the owners is unknown, or (9) some of the owners are under legal disability, or (10) no agreement can be reached with the owner on the value of the land.

■ There is no allegation in the petition which seems to conform with accuracy to any of the conditions above named. The petition, after naming the record owners, alleges that "there are other persons who are, *or may be,* interested in this action, and *who may have,* * * * some right, title * * and that the names of * * said other persons is unknown * * and upon diligent inquiry cannot be ascertained * *." (Emphasis supplied). This is not an allegation that the land is owned by persons whose names are unknown. The reason for permitting condemnation when land is owned by persons whose names are unknown is because the condemnor cannot locate or identify the persons who can convey title by deed. The record here does not disclose ownership by any unknown or unidentified persons. On the contrary, the petition sets out the record owners with no showing or allegation to indicate that the title of such owners is incomplete or defective. The allegation amounts to saying that: "We know the record owners and we know nothing against their title, but there *might* be someone else having an interest of which we don't know". A similar allegation could, of course, be made as to any land. Under the terms of the statute this is not a sufficient reason for justifying acquisition of the land by condemnation rather than by purchase. The artificiality of the allegation and the lack of real question about the ownership is indicated by the fact that, since the filing of the petition, the condemnor has treated the defendant as the owner and negotiated with her in an attempt to agree upon a value. It may be that petitioner can amend by alleging reasons for condemnation com-

ing within the purview of the statute, but at present the petition is insufficient.

## Objections 1, 2 and 3.

The grounds numbered 1, 2 and 3 which the defendant advances for dismissal of this suit go to the right of the petitioner to utilize this statute in any event. This question has once been decided in this district and adversely to the petitioner. In 1922 my predecessor on the bench, Judge Henry C. McDowell, in the case of United States v. Chichester, D. C., 283 F. 650, held that the procedure prescribed by the Act of March 16, 1918, could not be utilized by the United States in condemnation suits in this court over the objection of the landowner and relegated the government to the use of the general condemnation statute. Since 1922, the United States has brought hundreds of condemnation suits, involving thousands of separate tracts, all under the general statute. In the twenty years intervening since the Chichester case, it has not, to my knowledge, sought to invoke the Act of March 16, 1918, until now. It now asks that the holding of Judge McDowell be repudiated as erroneous. Judge McDowell was recognized as an able and studious judge with unusually wide experience in the field of real estate law and who, in the numerous condemnation suits brought before him, had explored every feature of this branch of the law. Obviously a decision emanating from such authority and so long acquiesced in as the law in this district should not be discarded except upon a clear showing of its error. An examination of the opinion in the Chichester case, which is available to anyone, shows that the objections raised by the landowner there are in substance, though with some enlargements, repeated here.

There can be no question, I think, that the Act of March 16, 1918, furnishes to the United States the right to condemn land by a procedure which is available to no other condemnor and which is less favorable to the landowner and more favorable to the condemnor than that provided by the general condemnation act. I am convinced also, from what I have been able to learn of the history of the Act of 1918, that it was intended by its author, and by the General Assembly which enacted it, that it should be ap-

plicable only where the United States desired to institute proceedings in the state courts. The act provides for proceedings to be brought in the "circuit court of the county" (i.e. the state court) wherein the land lies. Sec. 4388c. It is argued that this is of no significance or effect, because the same is true of the general condemnation act and that any condemnation act enacted by a state legislature would provide for action in the state courts; but that nevertheless the United States can resort to its own courts even though it uses a procedure adapted by the state for use in the state court; and that Congress by the enactment of Sects. 257 and 258, Title 40 U.S.C.A., has authorized this and the state cannot prevent it. But this argument is based on a wrong theory. The General Assembly was not attempting to restrict suits by the United States to the state courts. It knew as well as anyone else that the government could proceed in the federal courts under the procedure of the general condemnation act of Virginia, and that it had been doing so for years. The Act of 1918 was not a new general act available to all condemnors, or even to several classes. Its use was restricted to the United States *alone;* it was available to no others. It granted a special privilege to the United States in the form of a special procedure to be utilized in case the United States chose to resort to the state courts. We may assume that the General Assembly knew also that the power of the United States to condemn lands within a state is not dependent on the consent of the latter and that a state cannot prescribe the manner in which the United States shall exercise the power of eminent domain. Kohl v. United States, 91 U.S. 367, 374, 23 L.Ed. 449. When then it appears that the United States alone is permitted to use this statute and then only as to lands the acquisition of which has been previously consented to by the state (Sect. 2 of the Act of 1918, Sect. 4388b of the Code), it seems clear that the procedure authorized by the act was intended for use in the state courts only. A state cannot control the Federal Government in the exercise of the power of eminent domain; nor control the manner of exercising that power; nor direct in what courts it shall be exercised. It is therefore a needless thing for the state to enact legislation prescribing the conditions under which and the

manner in which that power shall be exercised except upon the basis that the procedure prescribed is applicable only if and when the United States desires to utilize the state courts, over which the state does exercise control.

This intention is supported by the history of the act. There are no records of the matter produced in hearings before committees of the Virginia Legislature, nor is it customary to submit committee reports explaining the purposes and effects of proposed legislation. In the absence of these I have endeavored to trace the history of this act through inquiry from its patron, committee members and others having knowledge of it. It is an interesting story. Prior to 1918 the United States was condemning large areas in Virginia for forest purposes. This litigation was extensive and involved numberless different tracts and in many of the suits the government was represented by one E. L. McNeilly, a special attorney of the Department of Justice, assigned to this work. All of these suits were under the general condemnation act of Virginia. As was well known, Judge McDowell was meticulous in protecting the rights of landowners and accustomed to give great weight to the assessment of values fixed by the commissioners appointed for that purpose. Code, Sects. 4366–4368. In acquiring these lands the government was accustomed to take from the ostensible owner an option to purchase at a named price, subject to the right to condemn if examination of the title failed to show complete and perfect title in the optionor. And it was the contention of the government that when condemnation became necessary the commissioners were restricted by the optioned price and could not assess the land at a higher value. In the case of United States v. Graham & Irvine, D. C., 250 F. 499, 503, decided November 23, 1917, Judge McDowell held that the commissioners were not so bound but could assess the land at such value as their proper judgment dictated. As a result of this the government encountered many awards in excess of the price it had expected to pay. Dissatisfaction with these conditions, as well as other considerations, led Mr. McNeilly to consider the possibility of proceeding in the state court and he drafted the act now in question and caused it to be introduced in the Virginia Legislature. Several of its provisions reflect the difficulties he had encountered in the federal court under the general act and which he hoped to avoid. This is notable in the provision for determining the value of the land, wherein it is prohibited that this be done by commissioners appointed for that purpose, and the provision that where the value of the land is stated or charged in the petition such value shall be taken as final and conclusive except where some claimant appears and denies the valuation stated. This latter provision would result in the condemnor obtaining judgment by default at its own valuation in most cases of mountain lands, where the owners are uncertain or not in position to appear and litigate the value; and a similar provision in another statute was held invalid by the Supreme Court of Virginia in Rudacille v. State Commission, 155 Va. 808, 825, 156 S.E. 829.

When the measure was presented to the state legislature it was represented as one to permit condemnation by the United States in the state courts—which it undoubtedly was intended to be; and the reasons for its enactment advanced before the committee having it in charge were in substance that it furnished a more expeditious method than the general condemnation statute; that the places of sessions of the state courts were usually much closer to the landowner and to witnesses than those of the federal courts and that the state courts were more frequently in session; that procedure in the state courts was cheaper in respect to the service of process, etc. because of the long distances which deputy marshals frequently had to travel in performing the service; and that appeals in the state court were less expensive. There is no question that it was the intention of the author of the statute, of its patron and of the Legislature that it should apply only to proceedings in the state courts; and, as is pertinently pointed out, the reasons advanced for its enactment cease to exist if the suit is not in the state court.

However, since Congress alone has power to prescribe what courts shall have jurisdiction of condemnation suits instituted by the federal government, and the procedure in such suits, the intention of the Virginia Legislature as to the use of the Act of 1918 does not in itself settle the question of the right of the government to proceed in this court under the provisions

of that act. There is involved the further question of whether Congress has authorized proceedings in this court to be conducted under the provisions of the Act of 1918. This seems to me to be the real question affecting the jurisdiction of this court. Before determining it, however, it is well to consider that ground of the motion to dismiss which seeks to strike down the Act of 1918 in its entirety as being in violation of the Constitution of Virginia.

The contention is that the statute violates that provision of the state constitution (Sect. 63, Const. of Va.), which reads in part: "The general assembly shall not enact any local, special or private law in the following cases: * * * Regulating the practice in * * * any judicial proceedings. * * *"

It is also asserted, as I understand it, that the act violates Sect. 64 of the Constitution, which provides that in all cases enumerated in Sect. 63 "and in every other case which, in its judgment, *may be provided for by general laws,* the general assembly *shall enact general laws".* (Italics supplied). The argument is that the General Assembly, in the exercise of its judgment, has determined that condemnation may be provided for by a general law and has enacted a general condemnation act; and that any special act on the subject is unconstitutional.

I am frank to say that I find the same difficulty in passing on this question of constitutionality that Judge McDowell had in the Chichester case. In every reasonable interpretation of the word this is a "special" act in the sense that it permits one particular litigant, or potential litigant, to proceed in the court in a manner denied to all other litigants; and in a manner different and more favorable than that to which other litigants are compelled to resort. While the differences in procedure between the Act of 1918 and the general condemnation act are varied, the most important and essential is in the manner by which the value of the land is determined.

The general law provides that the value shall be determined by commissioners appointed by the court, a body of five disinterested freeholders who shall be residents of the county in which the land lies. The commissioners are required to go upon the land and view it and they may thereafter hear such evidence as they desire. They are charged with determining not only just compensation for the land taken but also the amount of damage to the other property of the owner or of any other person resulting from the taking. Code, Sect. 4366. The theory is that the value of lands can best be determined by persons who live in the community, who are familiar with land values there, and who go upon and view the land for the purpose of observing its condition, its use and its location with reference to other lands of the owner and of others. This method is firmly fixed in the policy of the state and has resulted most satisfactorily. It has never been departed from except by the Act of 1918. This act reverses the traditional policy of having the land and its surroundings viewed by those who are to determine its value by expressly prohibiting that it be done by commissioners and providing that the assessment of value be done by the court or by a jury, neither of which has any opportunity to view the land. If the proceeding is in the federal court, it is probable that neither judge nor jury will have knowledge of land values in a distant county where the condemned land is situated.

Counsel for the government points out that in the last twenty years there have been two other condemnation acts enacted in Virginia which provide procedures differing from the general condemnation statute and argues that these indicate a departure from the traditional policy of fixing the land value. These are the Public Park Act of 1928, Acts 1928, c. 410, and the Highway Condemnation Act of 1940, Acts 1940, c. 380. These acts both relate to condemnation proceedings by certain state agencies. The first is that by which the state condemns lands for inclusion in public parks; the second is for use of the state highway commission in obtaining rights of way for highways. Both of them depart in some measure from the provisions of the general condemnation act but counsel is clearly mistaken in arguing that they indicate an intention or willingness to depart from the policy of having the land values fixed by commissioners. On the contrary that policy is rigidly adhered to. Under the Public Parks Act the court may, and on application of the petitioner is required to, appoint five persons termed "investigators" whose duties, among others, require that they shall "ascertain and determine, and to make a special report * * * as to the value of any such land * * * and the amount of such incidental damages which will result from the proposed condemnation * * *"; and they

are required "to examine the boundary line set forth in the petition and the land contained therein * * *". Code of Va., Sect. 4388(8). The purpose of these investigators is evidently to enable the petitioner to obtain information as to the boundaries, ownership and values of the many various tracts to be contained in a public park in rural or mountainous regions. But we find that when the case comes on for hearing before the court on the question of values and damages, the landowner may submit that issue to a jury (Code, Sect. 4388(12) or may demand that the value and damages be fixed by appraisal "commissioners" appointed for that purpose (Code § 4388(28).

The Highway Condemnation Act of 1940 (Acts of Assembly 1940, c. 380, p. 666) differs only slightly from the general act, the alterations being to expedite taking possession of the land condemned and to permit the taking of materials, e. g. sand, stone, etc., as well as land necessary for road locations, together with minor changes in procedure, among which is the manner of selecting the commissioners who are appointed to fix the value. But it is specifically provided that except as altered the procedure shall be as provided by the general act and that the value of the land taken and the damages shall be fixed by commissioners appointed by the court and who shall view the land. It is seen, therefore, that the right of the landowner to have his compensation fixed by commissioners who shall go upon and view the property is preserved in every act except the one now in question. The Virginia legislature has refused to depart from this policy even in favor of the state itself. That the Act of 1918 grants privileges to the United States available to no other condemnor is evident and the advantages are emphasized by the fact that if this act is sustained then the government can proceed either under it or under the general act, its choice lying in the hands of government counsel and dependent on whether he thinks it desirable from the government's standpoint that the persons fixing the value should view the land or not. This is strikingly illustrated here by the fact that the petitioner here has condemned other tracts close by and possibly adjacent to that involved here and of the same general nature. In these other cases it has used the general act. In this case only, and for reasons not disclosed, it has attempted to utilize the Act of 1918.

■■ Judge McDowell in the Chichester case clearly indicated that if the Act of 1918 had been for the benefit of some single private corporation, it would be in violation of the Virginia Constitution as a "special" act of the nature there forbidden. His doubt was whether the constitutional inhibition applied when the beneficiary of the special act was the federal government. I have searched diligently but have been unable to find any authority touching the subject. Frankly, I can think of no sound reason why the constitutional provision should not apply to the United States as well as to other litigants. The fact that the United States is the supreme governmental power does not exempt it from compliance with the established procedure of the courts in which it seeks to litigate; it has never claimed that its sovereignty gave it any such exemption. Except in those cases where Congress, in the proper exercise of its power, has authorized a special procedure for the United States in its own courts, the federal government proceeds as other litigants. It has not undertaken to compel, nor could it compel, that the states grant it a procedure in the state courts denied to all others seeking the same remedy.

It does not appear that the United States has ever utilized the Act of 1918 by a proceeding in the state courts to which the act was meant to apply, and, therefore, its constitutionality has never been passed on by the state court. It is always desirable that an alleged conflict between a state statute and the constitution of the state be passed on by the state courts and for that reason, as well as because determination of the question is not necessary to a decision of this case, I refrain from a holding that the Act of 1918 is in violation of the Virginia Constitution as a "special" act.

■ The determining reason why the objection of the defendant to the procedure under the Act of 1918 in this court should be upheld is that, in my opinion, proceedings under the act have never been authorized by Congress. In considering this question the following should be borne in mind. The exercise of the power of eminent domain by the United States is not dependent on the consent of the state. The latter can neither enlarge nor diminish the power nor prescribe the manner of its exercise by the United States; nor can it prescribe the forum in which it shall

be exercised. The power being complete in the federal government, the manner and procedure for its exercise can be directed solely by Congress. Congress has the power, if it so chooses, to enact federal statutes providing the method of procedure for the condemnation of lands by the United States. Indeed it has frequently been urged that, in the interests of simplicity and uniformity of procedure, Congress should enact a general federal condemnation act for use in all cases where the federal government seeks to condemn through the medium of the federal courts. However, Congress has refrained from taking this step and in lieu thereof has chosen, with certain special exceptions, to use in each case the procedure provided by the state in which the condemned land lies. The exceptions to this course are few and specific; as for example the Tennessee Valley Authority Act of 1933, 48 Stat. 58, 16 U.S.C.A. § 831 et seq., in which the procedure for condemnation of lands for the purposes of the T. V. A. is specifically prescribed, 16 U.S.C.A. § 831x; and in the Flood Control Act of 1928, 45 Stat. 536, 33 U.S.C.A. § 702d, where provision is made that in any condemnation under that act the value of the property taken shall be ascertained by commissioners appointed by the court. Except for such special cases it has been the consistent policy of Congress that the procedure should conform to that generally provided by the respective states. Obviously this course is not because the federal government is under the compulsion of utilizing the procedure of the state law but because it voluntarily chooses and adopts, and directs its agents to utilize, such procedure. Obviously also no state statute can control the manner in which the United States may proceed unless, and only in so far as, the latter voluntarily adopts the state statute. It is even more plain that agents and attorneys for the federal government act only under the authority of Congress and may proceed only as authorized by Congress.

There are two applicable statutes dealing generally with jurisdiction and procedure of condemnation suits instituted by the United States. By the Act of Congress of Aug. 1, 1888, 40 U.S.C.A. § 257, United States district courts are given jurisdiction of such suits; and, 40 U.S.C.A. § 258, it is provided that in such suits "The practice * * * and modes or proceedings * * * shall conform, as near as may be, to the practice * * * and proceedings existing at the time in like causes in the courts of record of the State within which such district court is held * * *."

An Act of Congress of July 2, 1917, 50 U.S.C.A. § 171, empowers the Secretary of War to acquire by condemnation lands for certain military purposes and provides that, "Such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted." It is to be noted that the last quoted language is the same as in the Act approved Aug. 18, 1890, 26 Stat. 316.

It is not believed that the difference in wording of the quoted provisions of these statutes indicates any difference in the Congressional intent or in the effect of the statutes. In the fifty years or more that both statutes have been in force there is no authority attributing to them any difference of purpose. They evidently have the same meaning and there can be little question that Congress intended the same thing, namely, that the United States, in condemning land in any state, should be bound, as near as possible, to the same procedure required of other condemnors who took land in that state. That is certainly the reasonable interpretation of the language "[the] proceedings existing * * * in like causes in the courts of record of the State".

As Judge McDowell so well said: "In 1888 the members of Congress certainly knew that in every state and territory of the Union there existed an established general procedure for condemnations of land, and it was, of course, the established general procedure of the state (or territory) in which the land to be condemned by the federal government lay that was to be conformed to. The 'causes arising' under the act of 1888 are condemnation suits prosecuted by the United States; the 'like causes' are condemnation suits prosecuted by other plaintiffs." [283 F. 652.]

The fact that Congress prescribed a particular procedure in such special cases as the T. V. A. and the Flood Control acts merely points out that it could have done the same in any other class of condemnation cases and emphasizes the fact that it chose instead to follow the path open to all other condemnors under the general laws of the respective states. It was easily within the power of Congress, had it so chosen, to provide for procedure conforming to that of the Virginia Act of 1918. It

could have either enacted a federal statute providing the same procedure or it could have recognized the existence of the McNeilly statute and authorized its use in the federal courts in Virginia. But it has done neither. It has left unchanged the federal statutes which indicate its intention that the United States should proceed as other litigants and under which the United States had always theretofore proceeded.

To quote again from the Chichester case: "Even if we assume that the members of Congress in 1888 anticipated the possibility that some of the states might thereafter adopt statutes which provide a special procedure for condemnations by the federal government, still the language of the act of 1888 negatives an intent that the procedure of such possibly anticipated state statutes should be followed; and it would have been unwise and very surprising if Congress had intended that any and every state could by act of Legislature provide a special procedure to be followed only in cases in which the federal government is the plaintiff. A federal statute displaying such intent would have closely resembled a surrender of one of the sovereign powers of the federal government, because giving such power to the state Legislatures might be so used as to greatly embarrass or even destroy the federal government's power of eminent domain. On the other hand, safety for the government lay either in a federal statutory procedure or in conformity of procedure to that of like causes in the state courts."

 If a state can enact a special condemnation statute applicable only when the federal government is the condemnor and if the Act of Congress of 1888 be construed as requiring the use of such state statute, then any state might require the United States to proceed in a manner much more burdensome and disadvantageous than that required of other condemnors and amounting practically to a nullification of the right to condemn. Certainly Congress did not intend this possibility. It did not intend that the exercise of the power of eminent domain by the United States should be subject to the hazards and difficulties arising from the possible prejudices and discriminations of state legislatures. That the statute in question here may be considered as more advantageous to the United States than the general statute is beside the point; it could just as well have been the opposite. And in the latter case it cannot be reasonably contended that the federal government would be compelled to forego use of the general law and follow the burdensome requirements of the special statute. And if we assume that there existed opportunity to proceed under either statute, there is nothing in the Congressional policy to indicate an intention that the choice of procedure was to be exercised solely by government agents or attorneys in each particular case. The interests of the government would be at the mercy of its attorneys who might, either through wrongful intent or by mistaken judgment, proceed under a statute highly discriminatory against the government. On the contrary I think it plain that Congress has intended that the United States should be on a level with other condemnors. It has directed that the procedure applicable to other condemnors be utilized, subject only to the provision that proceedings may be in the federal courts. It has given no authority to proceed otherwise.

I find that the view herein expressed, and likewise held in the Chichester case, is in line with the holding in the case of In re Secretary of the Treasury, C.C., 45 F. 396, 398, 11 L.R.A. 275, decided in the Southern District of N. Y. in 1891. In that case it appears that the legislature of New York had revised the general condemnation laws of the state and repealed the preexisting statute, excepting from the repeal all proceedings on behalf of the city of New York and certain city agencies. As to these the old statute remained in effect. The Secretary of the Treasury on behalf of the United States sought to condemn property in New York under the statute available to the city of New York.

In denying the right to do so, the court, after citing the provisions of the Act of Congress of August 1, 1888, 40 U.S.C.A. § 258, says in part: "In instituting the present application, the law officers of the government have adopted the proceeding thus specially saved to the board of education of New York city by the law of 1888. The present proceeding, therefore, conforms to the practice in the state court in an anomalous case, or a class of excepted cases, and does not conform to that in similar causes generally in the state courts. It may be conceded that a suit or proceeding to condemn land for a school-site is a 'like cause' to the present; but so are all the proceedings or suits to which the Code provisions apply. The cause of action in all is the as-

sertion of a right to condemn property for a public use. But the precise question is whether the existing practice in the courts of this state, to which this court is to conform as near as may be, is that which obtains in like suits generally, or that which obtains in some special and excepted class."

Hughes Federal Practice, Jurisdiction and Procedure, Sect. 3580, citing the Chichester case and In re Secretary of the Treasury, lays down the rule that the act of Congress, 40 U.S.C.A. § 258, requires conformity to the established general procedure of the state for condemnation of lands and federal courts are not authorized to adopt the procedure of special statutes. To the same effect is Cyclopedia of Federal Procedure (Longsdorf) Vol. 2, Sect. 431.

And in 10 R.C.L., Sect. 178, it is said that while Congress has the power to prescribe a form of procedure having no relation to that of the state in which the land lies, " * * * but when the statute provides that the condemnation shall be conducted in conformity as near as may be to the practice, pleadings, forms and proceedings existing at the time in the state courts of the district, the practice so enjoined upon the courts must be followed, and the government cannot select a procedure prescribed for a special and limited class of cases."

The fact that the special procedure in the instant case is one specifically for the benefit of the United States does not alter the situation, for the special procedure is one created by the state legislature, not by Congress; and as pointed out the state cannot create jurisdiction in a federal court nor authorize government agents suing in federal courts to adopt a special procedure not authorized by Congress. The question is not what privileges the state may grant to the United States when the latter sues in the state court, but what Congress has authorized as the procedure in the federal courts over which it alone has jurisdiction.

■ Something should be said as to the contention of the defendant that the Act of 1918 is in violation of the Virginia Constitution in that it provides only for assessing the value of the land taken but not for the damages that may result to the residue of condemnee's land. If the statute fails in the respect alleged, it would, I think, undoubtedly be in violation of Sect. 58 of the state constitution which prohibits that private property shall be taken *or*

*damaged* without just compensation. See Swift & Co. v. Newport News, 105 Va. 108, 113, 52 S.E. 821, 3 L.R.A.,N.S., 404; Tidewater Ry. Co. v. Shartzer, 107 Va. 562, 565, 566, 59 S.E. 407, 17 L.R.A.,N.S., 1053.

■ However, I am of opinion that an examination of the Act of 1918 fails to sustain this charge against it. The statute is unnecessarily long and complicated and in the respect mentioned is confusing. The act, Sect. 11 (Code, Sect. 4388k), provides that after giving notice to claimants, the court shall set the case for hearing at which "the court shall determine the value of the land * * * and the damages, if any, sustained by or through the proposed condemnation * * *." It is provided that if the petitioner shall allege in its petition the value of the land, the court shall, upon the hearing, accept such value as final and conclusive unless the landowner shall have appeared and denied the valuation stated; in which latter event the court shall ascertain and determine the *value* of the claimant's interest *in the land*. No reference is here made as to damages. And this is followed by a provision that if any person entitled to be heard "upon the *value of the land*" shall demand it then the "fact of *such value* shall be submitted to and ascertained by a jury * * *." (Italics supplied).

So far as Sect. 11 is concerned we have this situation: That it provides in general language for an ascertainment by the court of the value of the land and of the damages; but if the value of the land is contested, the terms of the statute provide for the ascertainment by the court of the value of the land only, with no reference to damages. And if the landowner demands a jury trial, it is the value of the land only which is submitted to the jury, and not the matter of damages. There is here no provision for the ascertainment of damages where a jury trial is asked and apparently no such provision in any case where an issue is made as to the value of the land, even though that issue be heard by the court.

It might be argued that the language first quoted from Sect. 11, namely, that "the court shall determine the value of the land * * * and the damages, if any, sustained * * *", indicates an intention that both land value and damages be considered no matter in what form the hearing was had, whether by the court or jury.

911

But to assume this and to construe the statute to correspond to that assumption would be to disregard the plain language of following portions of the section which deny such implication. This is particularly true with respect to the provision for jury trial where the right to such trial is limited to persons "owning any right, title", etc. *in the land* and "entitled to be heard * * * upon the value of the land"; and where the only issue submitted to the jury is "the fact of such value". A court would not be justified in construing this plain and definite language to include the claims of other persons on other issues where the legislature, with full opportunity to do so, has not included them.

However, Sect. 21 of the act (Code, § 4388u) touches further on this question—and, it may be said, adds to the confusion. This section provides that the judgment of condemnation and award shall be conclusive as to any and all damages resulting to the adjacent or other property of the owners of the land, or to the property of *any other person; provided* that the published notice prescribed in Sect. 8 (Code, § 4388h) shall have included reference to such other persons whose property might be damaged. The second paragraph of the section (Sect. 21) contains the further proviso that in the event any *such persons* appear and make claim to such "incidental damage", their claims shall be heard and determined in the same manner and under the same conditions as provided for the determination of the claims of owners of the land. The *such persons* referred to in this paragraph are plainly persons claiming no ownership in the land taken but claiming damage to their own property resulting from the taking. This is clear not only from the entire context but from the express reference that the claims of *such persons* are to be determined in the same manner as that available to owners. But we are not dealing here with claims to incidental damage made by persons owning no part of the land. The objection raised by defendant is that the statute provides no means for determining her claim as an owner of the land taken in so far as that claim relates to damage to the residue of her land. Whether the claims of non-owners to damages to their lands are in all respects to be determined in the same manner as claims made by owners for residual damage is not necessary to be decided here. In any event I can find no provision for the determination of damages to the residue of land, part of which is condemned, except as is set out in Sect. 11 of the act, heretofore discussed. As there pointed out the jury trial which the landowner may demand is limited to determining the value of the land taken but does not include the damage to the residue. Presumably, and because no other course is provided, the latter issue must be determined by the court.

Certainly there is a lack of logic in permitting the landowner to have a jury trial as to the value of the land condemned but requiring him to submit the question of his residual damage to the court. But this probably does not render the act unconstitutional. Apparently the argument of defendant is on the theory that the defendant is entitled to a jury trial on both issues. And this contention apparently emanates from the case of Beatty v. United States, 4 Cir., 203 F. 620, which held that a condemnation proceeding in a federal court came within the provisions of the Seventh Amendment to the Constitution of the United States preserving the right of jury trial in suits at common law and that the landowner is entitled to a trial by jury regardless of the provisions of the state condemnation law. This case is referred to by Judge McDowell in his opinion in the Chichester case.

However, the holding of Beatty v. United States, supra, was never generally accepted outside this circuit and is believed contrary to the weight of authority. See Bauman v. Ross, 167 U.S. 548, 593, 17 S.Ct. 966, 42 L.Ed. 270; Crane v. Hahlo, 258 U.S. 142, 147, 42 S.Ct. 214, 66 L.Ed. 514; Backus v. Fort Street Union Depot Co., 169 U.S. 557, 569, 18 S.Ct. 445, 42 L.Ed. 853; United States v. Jones, 109 U.S. 513, 519, 3 S.Ct. 346, 27 L.Ed. 1015. In the last named case it is said, page 519 of 109 U.S., page 350 of 3 S.Ct., 27 L.Ed. 1015: "The proceeding for the ascertainment of the value of the property and consequent compensation to be made * * may be prosecuted before commissioners or special boards or the courts, with or without the intervention of a jury, as the legislative power may designate."

█ See also United States v. Hess, 8 Cir., 71 F.2d 78, where the case of Beatty v. United States is discussed with the conclusion that is not in accord with the present weight of authority. To the same effect is United States v. Kennesaw Mountain Battlefield Association, 5 Cir., 99 F.2d

830, 834, and United States v. 243.22 acres of land, D.C.N.Y., 41 F.Supp. 805. See also Dobie on Federal Procedure, 1st Ed., p. 286. All of the encyclopedic authorities are agreed that condemnation is not a common law action and is not subject to the constitutional guarantee of jury trial. 20 Corpus Juris pp. 872, 999; 29 C.J.S. Eminent Domain, §§ 209–281, pp. 1127, 1283; 10 R.C.L. p. 187; 18 Am.Jur. p. 337. And see Richmond Fairfield Railway Co. v. Llewellyn, 156 Va. 258, 281, 157 S.E. 809, 162 S.E. 601, to the same effect, citing Nichols Eminent Domain 938. It is believed that the Beatty case has also been overruled by implication in this circuit by virtue of certain language in Suncrest Lumber Co. v. North Carolina Park Commission, D.C., 30 F.2d 121, 126, where the court quoting from Backus v. Fort Street Union Depot Co., 169 U.S. 557, 18 S.Ct. 445, 42 L.Ed. 853, says: "All that is essential is that in some appropriate way, before some properly constituted tribunal, inquiry shall be made as to the amount of compensation, and when this has been provided there is that due process of law which is required by the Federal Constitution."

It would seem also that Congress has not accepted the authority of the Beatty case. In the Mississippi Flood Control Act, 33 U.S.C.A. § 702d, and in the Tennessee Valley Authority Act of 1933, § 25, 16 U.S.C.A. § 831x, in each of which provisions are made for the condemnation of lands by the United States, it is specifically provided that the land values shall be ascertained by commissioners appointed by the court. In the case of the first named act it was clearly within the mind of Congress to prevent the award being made by a jury. See quotations from the Congressional debates in United States v. Hess, 8 Cir., 71 F.2d 78, 80.

 It would seem therefore that the legislative body may provide different means for ascertaining the value of land taken on the one hand and the amount of residual damage on the other; even in submitting one issue to a jury, the other to the court. The inconsistency or lack of logic in such a course would not render the statute unconstitutional, for the reason that the landowner does not have a constitutional right to demand any particular course of procedure as to either claim so long as the means provided constitute due process of law.

While an attempt has been made herein to discuss each of the various questions raised by the defendant, my conclusion that the petitioner may not proceed under the provisions of the Virginia Act of March 16, 1918, rests upon the ground that Congress has never authorized the bringing of condemnation suits in the federal courts under the provisions of this statute but has prescribed that such suits shall be under such procedure as is set forth in the general condemnation act of the state; and that agents and attorneys of the federal government are without power to proceed except as authorized by Congress.

I am of opinion, however, that this does not necessarily require the dismissal of the suit, provided the petitioner amends its petition and thereafter pursues the course of procedure provided by the general condemnation act.