**TOWN OF DURHAM, N. H.**
v.
**UNITED STATES of America and R. E. Chapman Company.**

**CITY OF DOVER, N. H.**
v.
**UNITED STATES of America, James H. Douglas, Individually and in his official capacity as Secretary of the U. S. Department of Air Force, Alden K. Sibley, Individually and in his official capacity as representative of the New England Corps of Engineers of the U. S. Army, Engineer Division, Thomas P. Coleman, Individually and in his official capacity as Commander, Pease Air Force Base, R. E. Chapman Company, and John Doe.**

Civ. A. Nos. 1915, 1916.

United States District Court
D. New Hampshire.
July 11, 1958.

Charles F. Hartnett, Dover, N. H., for Town of Durham, N. H.

Burns, Calderwood, Bryant & Hinchey, Stanley M. Burns, Dover, N. H., for City of Dover, N. H.

Maurice P. Bois, U. S. Atty., Concord, N. H., for defendants.

CONNOR, District Judge.

These are actions commenced by the plaintiffs in the Superior Court of Strafford County primarily to enjoin the defendants from acquiring by eminent domain or otherwise certain underground water sources in the Dover-Madbury Aquifer, all of which the plaintiffs claim they own. The plaintiff, City of Dover, also seeks, among other things, a five million dollar bond for damages, and an order requiring the defendants to construct a dam on the Bellamy River in lieu of obtaining water in the Dover-Madbury Aquifer.

The complaints allege that the City of Portsmouth agreed with the United States to convey to it certain of its water rights and distribution facilities in order to supply the needs of the Pease Air Force Base and that the United States in turn agreed with Portsmouth that it would obtain water elsewhere and convey it to Portsmouth to compensate that city for the loss of the water so taken.

After suits were commenced in the state court and removed to this court, the United States instituted condemnation proceedings against land in the Dover-Madbury Aquifer, naming as defendants certain owners of the fee simple in land, as well as "unknown owners," but not including the present plaintiffs. The plaintiffs, claiming that they owned all the subterranean water, sought to intervene in that case, and the motion has been allowed.

Thus a primary issue in the instant cases, and a likely issue insofar as it affects the plaintiffs in the condemnation case, is whether or not the United States may condemn property of a private party for the purpose of conveying it to another private party to compensate it for property taken for public use. This much the plaintiff, City of Dover, concedes in paragraph 4 of its petition to intervene in the condemnation case. Also at issue in these cases and in all probability in the condemnation proceeding is whether the eminent domain action is authorized by Congress (Public Law 155—82nd Congress, 65 Stat. 336 and Public Law 254—82nd Congress, 65 Stat. 760).

The plaintiffs now move that the actions be remanded, and the defendants move to dismiss for want of jurisdiction in this Court.

Resolution of these motions depends on an interpretation of Title 43 U.S.C.A. § 666,[1] as well as on a solution of questions of state versus federal jurisdiction and eminent domain.

 Section 666 in its jurisdictional aspects is ambiguous and, therefore, resort to its legislative history is necessary. In the committee report, No. 755, 82nd Congress, 1st Session, there is a letter from Senator Magnuson objecting to the bill if it would interfere with federal reclamation projects such as the Hells Canyon Project. There is a reply letter from Senator McCarran assuring that the bill would have no such result.

The committee report states that it is not the intent of the bill to interfere with Bureau of Reclamation projects or similar projects, and that if the government needs more water for such a project, it should proceed by condemnation under existing law. The committee report states:

"Senator Magnuson raised the question as to whether S.18 could be used for the purpose of delaying or blocking a multiple-purpose development such as proposed for the Hells Canyon project on the Snake River in the Columbia Basin or other similar projects, stating that there was a possibility of an individual or group having water rights on that stream bringing suits to adjudicate their respective rights and therefore preventing the Bureau of Reclamation from going ahead with the Hells Canyon project while litigation is in process or pending. The committee, for the legislative history of this bill, definitely desires to repudiate any such intent which may be deduced from S.18 and states that this is not the purpose

1. "Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source * * * where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States * * * (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual * * *."

and the intent of this legislation. Where reclamation projects have been authorized for the benefit of the water users and the public generally, *they should proceed under the law as it exists at the present time and should the Government have reason to need the water of any particular user on a stream, that water should be obtained by condemnation proceedings as is already provided for by law.* The committee can think of no particular reason why the mere development of a project should be delayed or stopped by the passage of S.18 and it is not so intended. An exchange of letters by Senator Magnuson and Senator McCarran dealing with this feature of the bill is hereto attached and made a part of this report." [Emphasis added.]

█ █ If the act is not intended to interfere with Bureau of Reclamation and similar projects, it should not interfere with Defense Department efforts to condemn property in connection with an Air Force Base. The power of eminent domain is an inherent, essential attribute of sovereignty. Kohl v. United States, 91 U.S. 367, 23 L.Ed. 449. It may not be taken away by contract or surrendered. City of Norton v. Lowden, 10 Cir., 84 F.2d 663, United States v. Village of Highland Falls, 2 Cir., 154 F.2d 224. "A state cannot control the Federal Government in the exercise of the power of eminent domain; nor control the manner of exercising that power; nor direct in what courts it shall be exercised." United States v. Alexander, D.C., 47 F.Supp. 900, 904. Where necessary, the federal court has enjoined prosecution in the state court where the United States has instituted condemnation proceedings in the federal court. Treasure Co. v. United States, 9 Cir., 169 F.2d 437. Federal statutes provide that the federal courts shall have original jurisdiction of condemnation proceedings, Title 28 U.S.C.A. § 1358, and the venue is in the district where the land is located, Title 28 U.S.C.A. § 1403.

█ All of these considerations, when coupled with the quoted legislative history of section 666, demonstrate that it was not the legislative intent to waive sovereign immunity for the purposes of allowing a state or federal court to adjudicate issues involving the right of the United States to condemn property by eminent domain, while the government is in the process of acquiring water rights allegedly for an Air Force Base and allegedly pursuant to Act of Congress. Since section 666 does not apply at all, jurisdiction for the plaintiffs' suits in either the state or federal court is equally wanting.

The actions by the plaintiffs in the state court were filed at a time when eminent domain proceedings by the government were imminent. The main contention of the plaintiff, City of Dover, is that the government has no right by eminent domain proceedings to take its property to convey to another whose property had been taken for public use. It is immaterial that plaintiffs' actions anticipated the government's condemnation action in this court by a few weeks, particularly in view of the fact that plaintiff, City of Dover, seeks an injunction against future encroachment by eminent domain or otherwise of its water supply. If plaintiff sought damages, his remedy would be under the Tucker Act, Title 28 U.S.C.A. § 1346(b); and 40 U.S.C.A. § 258a provides adequate protection for such rights as interested parties may assert. United States v. 170.88 Acres of Land, etc., in Floyd and Pike Counties, Kentucky, D.C.1952, 106 F.Supp. 623.

█ Further proof that section 666 was not intended to embrace this type of case is found in the fact that it authorizes a plaintiff to "join" the United States. This indicates, and the legislative history bears it out, that section 666 was intended for the type of case where a general settlement of the water rights of many users was sought; not where the United States (and its agents), the sole defendant, is seeking to condemn the property under section 258a of Title 40 U.S.C.A.

All parties place great stress on Rank v. Krug, D.C.Cal.1956, 142 F.Supp. 1 and In re Green River Drainage Area, D.C. Utah1956, 147 F.Supp. 127.

■ The decisions in these cases, the one deciding that there was jurisdiction in the federal court, and the other in the state court, are both distinguishable. In neither case was there a prospective condemnation suit, and in neither case was there in issue the right of the United States to take property by eminent domain. In the Green River case, the United States was but one of many riparian water users involved in a "general determination" of water rights. In Rank v. Krug, the gist of the action was that riparian owners below a dam sought a "physical solution" of their rights against the United States. The dam had been built by the United States by Act of Congress, but the Act afforded no remedy to riparian owners although they had vested rights recognized by Reclamation Acts. The Court stated at page 81:

"Obviously, the very purpose of [section 666] * * * was to provide a remedy and a procedure where these previously Congressionally recognized vested rights could be litigated as against the sovereign, and result in a judgment which would be res judicata upon the United States."

In the present case, the main issues involve the right of the government to take property by eminent domain, and, unlike Rank v. Krug, there is adequate remedy for interested parties, in Title 40 U.S.C.A. § 258a.

In view of the extremely ambiguous jurisdictional provisions of section 666, and from a study of its legislative history, it is concluded that section 666 does not contemplate jurisdiction in either the state court or the federal court under the circumstances of this case.

Accordingly, the plaintiffs' motions to remand must be denied and the defendants' motions to dismiss are granted. An order will be so entered.